**UNITED STATES of America**

v.

**Michael Lewis MILLER, Appellant.**

**No. 03–1519.**

United States Court of Appeals, Third Circuit.

Argued Dec. 5, 2003.

Decided June 10, 2004.

On Remand from the Supreme Court of the United States April 4, 2005.

July 29, 2005.

See also 374 F.3d 206.

Andrea G. Foulkes, Office of United States Attorney, Philadelphia, PA, for United States of America.

Christopher D. Warren, Philadelphia, PA, for Appellant.

Before SLOVITER and ALITO, Circuit Judges, and OBERDORFER,\* District Judge.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

Before us is the appeal of Michael Lewis Miller following the order of the United States Supreme Court granting certiorari, vacating the judgment of this court, and remanding for further consideration in light of its decision in *United States v. Booker*, 543 U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). As explained below, having determined that the sentencing issues implicated here are best addressed by the District Court in the first instance, we will remand for resentencing.

### I.

In April 1997, a jury sitting in the United States District Court for the Eastern District of Pennsylvania convicted Miller (an attorney), as well as his co-defendants George Jensen, Philip Rennert, and David Yeaman, for their involvement in a complex scheme involving the leasing of worthless stocks of three public companies to the Teale Network ("Teale"). *See generally United States v. Rennert*, 374 F.3d 206 (3d Cir.2004); *United States v. Yeaman*, 194 F.3d 442 (3d Cir.1999).[1] Teale, a net-

---

\* Hon. Louis F. Oberdorfer, United States District Court for the District of Columbia, sitting by designation.

1. This court has previously set forth in great detail the full contours of this scheme, *see*

*Rennert*, 374 F.3d at 207–09; *Yeaman*, 194 F.3d at 446–48; thus, in the interest of brevity, we will not do so again.

work of fraudulent offshore and domestic companies, represented these leased stocks as assets available to pay claims pursuant to reinsurance contracts entered into with a Pennsylvania-based insurance company, the World Life and Health Insurance Company ("World Life"). When World Life attempted to liquidate these assets to pay outstanding medical reinsurance claims, the stocks were found to be worthless. The jury convicted Miller of conspiracy, wire fraud, and securities fraud for his role in the scheme. *Rennert,* 374 F.3d at 207.

Thereafter, the District Court, applying the United States Sentencing Guidelines, sentenced Miller to seven months incarceration. Notably, although the District Court enhanced the sentences of Miller, Jensen, and Rennert due to its finding that their actions caused a loss of confidence in an important institution, it held that no monetary loss was caused by the Defendants' fraud because it found that World Life was insolvent at the time it entered into reinsurance contracts with Teale. Thus, for sentencing purposes, the District Court concluded that the loss amount occasioned by the Defendants' crimes was zero. The District Court also rejected, over the United States' objection, the application of additional sentencing enhancements for use of special skills (*e.g.,* Miller's legal training) and for substantially jeopardizing a financial institution (the stock market). *Id.* at 209.

Following these District Court proceedings, Miller and the other Defendants appealed to this court, challenging, *inter alia,* the District Court's instructions to the jury and the sufficiency of the evidence supporting their convictions. *Id.* The United States filed cross-appeals challenging several of the District Court's decisions at sentencing.

By way of several unpublished opinions, *see United States v. Rennert,* Nos. 98–1145 & 98–1101, slip op., 1999 WL 1072198 (3d Cir. Oct. 15, 1999); *United States v. Jensen,* Nos. 98–1148 & 98–1104, slip op. 1999 WL 1072195 (3d Cir. Oct. 15, 1999); *United States v. Miller,* Nos. 98–1147 & 98–1103, slip op., 1999 WL 1072197 (3d Cir. Oct. 15, 1999), as well as one published opinion, *see United States v. Yeaman,* 194 F.3d 442 (3d Cir.1999), we affirmed the convictions in all respects. However, on the United States' cross-appeals, we remanded Miller's case, along with that of his co-defendants, for resentencing. *See Rennert,* 374 F.3d at 209. Specifically, we directed the District Court to reconsider whether there was a causal connection between the Defendants' misrepresentations and the fraud loss (and, if so, in what monetary amount) and, in Miller's case, whether an enhancement would be appropriate for Miller's use of special skills (*i.e.,* his legal training).

Pursuant to our directive, the District Court, on February 3, 2003, held a resentencing hearing for Miller, Jensen, and Rennert. At this hearing, Miller attempted to present testimony and documents in support of his argument that the scope of his involvement in the conspiracy was less than that of his co-conspirators and that the extent of the total loss caused by the fraud was not foreseeable to him. The District Court declined to permit Miller to submit evidence that was not already presented at trial because the issue was "subsumed" by the jury's verdict and was therefore immaterial to sentencing. *Id.* at 209–10.

On February 13, 2003, the District Court issued an opinion finding that there was " 'a causal connection between the misrepresentations of the Defendants and the continued payment of premiums to World Life . . . and the Defendants,' " *Id.*

at 210 (quoting opinion of District Court), and that, for purposes of sentencing, the total fraud loss caused by Miller and his co-defendants was approximately $3.2 million. In addition, the District Court enhanced Miller's sentence on the basis of his use of special skills and more than minimal planning. The District Court further enhanced Miller's sentence due to its finding that his actions caused the loss of confidence in an important institution—the stock market. Ultimately, applying the Guidelines as mandatory, the District Court sentenced Miller to fifty-one months in prison. *Id.* at 210.[2]

Miller again appealed to this court, as did Rennert and Jensen. All three of the Defendants challenged the District Court's factual finding of a causal connection between their misrepresentations and the victim's loss, as well as the amount of fraud loss. Furthermore, relying on *United States v. Collado*, 975 F.2d 985 (3d Cir.1992), Miller argued that the District Court misapplied U.S.S.G. § 1B1.3, the relevant conduct provision of the Guidelines. Miller also challenged the District Court's order barring him from submitting additional evidence at the resentencing hearing. This court, by opinion filed June 10, 2004, affirmed the District Court's sentencing determinations in all respects. *Rennert*, 374 F.3d at 217.

Several weeks after this court issued its opinion affirming Miller's post-remand sentence, the Supreme Court decided *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).[3] Thereafter, relying on *Blakely*, Miller filed a petition for a writ of certiorari in the Supreme Court. While Miller's petition

was pending, the Supreme Court decided *Booker*. The Court then granted Miller's petition for a writ of certiorari, vacated this court's judgment at 374 F.3d 206, and ordered the case "remanded to the United States Court of Appeals for the Third Circuit for further consideration in light of ... *Booker*...." *Miller v. United States,* —— U.S. ——, 125 S.Ct. 1744, 161 L.Ed.2d 598 (2005) (mem.). That is the order on which we proceed.

## II.

As discussed in more detail in *United States v. Davis*, 407 F.3d 162 (3d Cir.2005) (en banc), the Supreme Court in *Booker* held that the Sixth Amendment to the United States Constitution "as construed in *Blakely* does apply to the [United States] Sentencing Guidelines." *Booker*, 543 U.S. at ——, 125 S.Ct. at 746 (Stevens, J.). *Booker* was decided by two opinions of the Court. In the first opinion, authored by Justice Stevens for a majority of five, the Court reaffirmed the holding in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt," and extended that rule to the United States Sentencing Guidelines. *Booker*, 543 U.S. at ——, 125 S.Ct. at 756 (Stevens, J.). The second opinion, authored by Justice Breyer for a majority of five, focused on the remedy. The Court held that 18 U.S.C. § 3553(b)(1), the provi-

---

**2.** The District Court further imposed sentences of sixty-three and thirty months imprisonment on Rennert and Jensen, respectively. *Rennert*, 374 F.3d at 210.

**3.** In *Blakely*, the Supreme Court, applying the rule announced in *Apprendi v. New Jersey*, 530

U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), held unconstitutional certain applications of the State of Washington's determinate sentencing scheme.

sion of the Sentencing Reform Act of 1984 that made the Guidelines mandatory, was incompatible with the Court's constitutional ruling; thus, the Court severed and excised § 3553(b)(1). Similarly, 18 U.S.C. § 3742(e), "the provision that set[ ] forth standards of review on appeal, including *de novo* review of departures from the applicable Guidelines range," was also severed and excised because it contained critical cross-references to the section that made the Guidelines mandatory. *Booker*, 543 U.S. at ——, 125 S.Ct. at 764 (Breyer, J.). The net result was to delete the mandatory nature of the Guidelines and transform them to advisory guidelines.

■ This court has taken the position that *Booker* sentencing issues raised on direct appeal are best determined by the district courts in the first instance. *See United States v. Davis*, 397 F.3d 173, 183 (3d Cir.2005) ("In light of the determination of the judges of this court that the sentencing issues appellants raise are best determined by the District Court in the first instance, we vacate the sentences and remand for resentencing in accordance with *Booker*."), *reh'g denied*, 407 F.3d 162 (3d Cir.2005) (*en banc*); *see also United States v. Bruce*, 405 F.3d 145, 150 (3d Cir.2005); *United States v. Remoi*, 404 F.3d 789, 796 (3d Cir.2005); *United States v. Ordaz*, 398 F.3d 236, 239 (3d Cir.2005). Moreover, we have adhered to this position in cases involving a procedural posture similar to the one at bar. *See, e.g., United States v. Agnew*, 407 F.3d 193, 195 (3d Cir.2005) (analyzing case wherein Supreme Court issued order granting certiorari and remanding in light of *Booker*, ultimately stating that "having concluded that the sentencing issues based on *Booker* are best determined by the District Court in the first instance, we will vacate the sentence and remand. . . ."). In conformance with this precedent, we will vacate Miller's

sentence and remand to the District Court for resentencing in accordance with *Booker*.

■ Considering, however, that in vacating our judgment, the Supreme Court did not discuss, let alone call into question, Miller's underlying conviction or our holdings thereon, this court will not remand the issue of Miller's conviction to the District Court. Thus, to be perfectly clear: the *only* issue that the District Court is to consider on remand is that of Miller's sentence. *Cf. Agnew*, 407 F.3d at 195.

We further note that, in its February 13, 2003 opinion calculating Miller's sentence, the District Court engaged in a fair amount of judicial fact finding. For instance, the District Court itself resolved the issue of causation with respect to fraud loss and further determined the amount of loss occasioned by Miller's crimes. It also decided—without any jury findings on such topics—that Miller had utilized special skills and had occasioned a loss of confidence in an important institution. In addition to engaging in such judicial fact finding, the District Court also necessarily resolved various procedural decisions at the sentencing hearing; for example, it declined to permit Miller to submit the additional evidence he proffered at the February 3, 2003 sentencing hearing. *Rennert*, 374 F.3d at 210. And, as discussed above, this court affirmed the District Court's factual findings, legal conclusions, and procedural decisions in all respects.

Nothing in *Booker* or the Supreme Court's order in this case necessarily calls into question the correctness of the District Court's factual findings or procedural decisions at the resentencing, or, for that matter, this court's approval thereof. To be sure, in light of *Booker* the District Court on remand must employ the Guidelines as advisory precepts rather than as

mandatory. It must further tailor Miller's sentence in perspective of the statutory requirements identified by the *Booker* Court, such as the statutory requirements that a sentence reflect the seriousness of the offense, promote respect for the law, provide just punishment, and afford adequate deterrence. *Booker,* 543 U.S. at ——, 125 S.Ct. at 764–65 (Breyer, J.) (citing 18 U.S.C. § 3553(a)).

We merely note that the District Court is free to engage in precisely the same exercise in judicial fact finding as it did in February 2003, so long as such fact finding is consistent with *Booker. Cf. United States v. Antonakopoulos,* 399 F.3d 68, 75 (1st Cir.2005) ("The error is not that a judge (by a preponderance of the evidence) determined facts under the Guidelines which increased a sentence beyond that authorized by the jury verdict or an admission by the defendant; the error is only that the judge did so in a mandatory Guidelines system."). Likewise, nothing in *Booker* causes us to retreat from our prior approval of the District Court's interpretation and application of the Guidelines to Miller's case (save, of course, the fact that the Court interpreted and applied the Guidelines as mandatory). Finally, as was true when it conducted its sentencing in February 2003, the District Court is free to use its ordinary discretion in handling the various procedural issues (such as the admission of additional evidence) that may arise.

### III.

For the foregoing reasons, we will vacate Miller's sentence and remand to the District Court for resentencing in accordance with *Booker.*