**UNITED STATES of America**

v.

**Nicholas PAZ**

**No. CRIM.A.02–441–1.**

United States District Court,
E.D. Pennsylvania.

Aug. 26, 2005.

Roberta Benjamin, U.S. Attorney's Office, Philadelphia, PA, for the United States of America.

## MEMORANDUM OPINION

RUFE, District Judge.

On August 12, 2005, Defendant Nicholas Paz filed a timely notice of appeal to the Third Circuit from the judgment of sentence in the above-captioned matter. The Court submits this memorandum opinion in accordance with Local Appellate Rule 3.1. Since the Court does not know what issues Defendant will raise on appeal, the Court will discuss its general approach to post-*Booker* resentencings and the issues raised by Defendant's counsel at the sentencing, as well as address the reasonableness of Defendant's sentence in light of underlying legal standards and the facts of this case.

## I. BACKGROUND

On May 28, 2002, Defendant and William Gaines, armed and wearing dark pullover sweatshirts and dust masks covering their faces, entered the Sun East Federal Credit Union ("SEFCU"), located at 3601 Chichester Avenue at the Chichester Shopping Center in Boothwyn, Pennsylvania. Brandishing revolvers, Defendant and Gaines demanded access to tellers' drawers and the bank's vault, grabbed money from several drawers while ordering tellers to do the same, placed the money in a garbage can and ordered SEFCU's employees and customers to lay down on the floor.

Dennis McCoy and Harvey Clanton were waiting outside in getaway and switch vehicles, a white Neon and a black Cadillac, respectively. McCoy had a V. Berhnardelli .380 pistol, and Clanton had a loaded MISR AK–762 rifle. After taking approximately $19,554 from the SEFCU, Defendant and Gaines got into the white Neon. By this time, the Upper Chichester police arrived at the scene and pursued the robbers. Defendant and Gaines jumped out of the white Neon, climbed a fence and ran to Clanton's black Cadillac. Clanton

drove the robbers away, but the police arrested McCoy. The $19,554 was ultimately recovered at the time of Defendant's arrest.

On July 25, 2002, a grand jury returned a ten-count indictment against Paz and his co-defendants McCoy, Gaines, and Clanton, charging Defendant with armed robbery of a bank in violation of 18 U.S.C. § 2113(d) (count one), conspiracy to commit bank robbery in violation of 18 U.S.C. § 371 (count two), using and carrying a firearm during a crime of violence in violation of 18 U.S.C. § 924(c) (count three), and possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g) (count seven). Upon the Government's subsequent motion, the Court dismissed count seven against Defendant. On June 9, 2003, Defendant entered a counseled plea of guilty to counts one, two, and three of the indictment, which the Court accepted.

On January 9, 2004, after adopting the pre-sentencing report's recommendations over Defendant's objections, the Court sentenced Defendant to serve sixty months imprisonment on count one, three hundred months on count two, and eighty-four months on count three, all consecutive to each other for a total of four hundred and forty four months. The Court also or-dered five years of supervised release, and assessed a $2,500 fine. On January 20, 2004, Defendant appealed the final judgment to the Court of Appeals for the Third Circuit.[1] The Court of Appeals, without addressing the merits of any of Defendant's grounds for appeal, vacated the sentence and remanded to this Court for resentencing in accordance with *U.S. v. Booker*, 543 U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) and *U.S. v. Ordaz*, 398 F.3d 236, 239 (3d Cir.2005).

The Court approached Defendant's resentencing as if it were the original proceeding, while taking into account any new facts or information made available to the Court since Defendant's pre-*Booker* 2004 sentencing.[2] On August 8, 2005, the Court sentenced Defendant to sixty months imprisonment on count one, two hundred and ten months on count two, and eighty-four months on count three, all consecutive to each other for a total of three hundred and fifty-four months. The Court imposed a five-year term of supervised release, imposed a minimal fine of $1,500, and ran the sentence concurrently to any other sentence Defendant is presently serving.

## II. SENTENCING STANDARDS

The Supreme Court's majority in *Booker* held that mandatory enhancement of a

---

**1.** Pursuant to Rule 4(b)(1)(A) of the Rules of Appellate Procedure, "a defendant's notice of appeal must be filed in the district court within 10 days after the later of: (i) the entry of either the judgment or the order being appealed; or (ii) the filing of the government's notice of appeal." The Court entered its judgment of sentence on January 9, 2005 (even though the orders signed at Defendant's trial/sentencing were docketed only on January 12, 2005). Therefore, it appears that Defendant's notice of appeal is one day late (the Court notes Defendant's counsel's certification that he served a copy of the notice of the appeal on the Government by first-class mail on January 16, 2005). The Government has not raised an objection to the timeliness of Defendant's appeal and the Third Circuit remanded for resentencing without addressing this issue. Accordingly, the issue of the timeliness of Defendant's appeal does not deprive this Court of jurisdiction on remand. *See also* Fed. R.App. P. 4(b)(4) (the court has discretion to extend filing time by thirty days).

**2.** The Court directed counsel to brief all sentencing issues to be addressed, and the United States Probation Department to revise the pre-sentencing report (the "PSR") in accordance with *Booker*, if appropriate. Thereafter, the Court scheduled sentencing. *See* the Court's Order dated May 16, 2005 [Doc. # 114].

sentence under the federal Sentencing Guidelines, based on facts found by the court alone, violates the Sixth Amendment.[3] The Court excised that provision of the statute making application of the Guidelines mandatory, making the Guidelines "effectively advisory."[4] Under the post-*Booker* sentencing framework, "District Courts will consider the applicable advisory Guidelines range in addition to factors set forth in 18 U.S.C. § 3553(a)."[5]

"Direct appeals of sentences imposed before *Booker* generally present two kinds of claims: first, defendants whose sentences were enhanced by judicial factfinding raise Sixth Amendment claims; second, defendants who contend the District Courts erroneously treated the Guidelines as mandatory rather than advisory."[6] As to the latter, the Third Circuit presumes plain error prejudice where the district court's sentencing calculus was governed by the Guidelines "mandatory" framework.[7] However, the Third Circuit "has taken the position that *Booker* sentencing issues raised on direct appeal are best determined by the district courts in the first instance."[8] Accordingly, the Third Circuit vacates such sentences and remands for resentencing in accordance with *Booker*.

On remand, the district court "must employ the Guidelines as advisory precepts rather than as mandatory" and "tailor [Defendant's] sentence in perspective of the statutory requirements identified by the *Booker* Court, such as the statutory requirements that a sentence reflect the seriousness of the offense, promote respect for the law, provide just punishment, and afford adequate deterrence."[9] The district court is, however, "free to engage in precisely the same exercise in judicial fact finding as it did [at the original, pre-*Booker* sentencing], so long as such fact finding is consistent with *Booker*," as well as "to use its ordinary discretion in handling the various procedural issues . . . that may arise."[10]

## III. DISCUSSION

Defendant pleaded guilty to one count of armed robbery, one count of conspiracy to commit bank robbery, and one count of using and carrying a firearm during a crime of violence. This Court re-appointed Stuart M. Wilder, Esq., to represent Defendant in this matter for the purposes of re-sentencing. Pursuant to the Court's directive, Defendant filed a sentencing memorandum briefing the issues to be addressed at his sentencing, to which the Government responded. The United States Probation Department filed a revised PSR. However, the only revisions to the PSR were additions of Defendant's recent convictions on charges of homicide in Philadelphia state court, and sentencing for witness tampering and conspiracy to

**3.** 125 S.Ct. at 756; *see* U.S.S.G.

**4.** *Id.* at 757.

**5.** *United States v. Davis*, 407 F.3d 162, 163 (2005).

**6.** *Id.* at 163–64.

**7.** "Although plain error jurisprudence generally places the burden on an appellant to demonstrate specific prejudice flowing from the District Court's error, in this context where mandatory sentencing was governed by an erroneous scheme prejudice can be presumed." *Id.* at 164–65 (many of the direct appeals call for a plain error analysis because the defendants did not raise the sentencing issue before district court).

**8.** *United States v. Miller*, 417 F.3d 358, 361–62 (3d Cir.2005).

**9.** *Id.,* at 417 F.3d 358, 362; *see also* 18 U.S.C. § 3553(a) (listing factors).

**10.** *Id.*

tamper with a witness, by Chief Judge Giles in this district.[11]

Neither the Government nor Defendant objected to the facts presented in the revised PSR.[12] Since there were no changes in the factual portion of the PSR other than the additional convictions, the Court adopted the PSR—with one important modification.[13] Having determined the appropriate advisory Guidelines range, the Court looked at the sentencing factors of 18 U.S.C. § 3553(a) relevant to imposing a sentence that is "reasonable" under *Booker*. At the completion of this process the Court imposed a sentence ninety months below the recommended Guidelines range.

## A. Guidelines Range

While the Guidelines are no longer mandatory, the Court begins by calculating the approximate *advisory* Guidelines range. The Guidelines direct the grouping together of all counts involving substantially the same harm or victim, and the PSR recommended grouping counts one and two, conspiracy to commit armed bank robbery and armed bank robbery.[14] The applicable offense level is for armed bank robbery, the most serious of the counts in the grouping. The base offense level for armed robbery of a bank in violation of 18 U.S.C. § 2113(d) is twenty.[15] Two levels are added for taking the property of a financial institution, and one level is added for the attempted loss of $19,554.[16]

Two levels are added for Defendant's obstruction of justice in this case, i.e. his attempt to persuade Clanton to provide false testimony to a federal grand jury in an attempt to earn a 5K1.1 downward departure motion from the Government.[17] As stated earlier, since Defendant's 2003 sentencing, Chief Judge Giles convicted and sentenced Defendant (along with his former attorney, Mr. Seal) on charges of witness tampering. That sentence was initially, imposed concurrently to the sentence in this case because of this Court's prior finding of obstruction of justice at Defendant's 2003 sentencing. Chief Judge Giles' judgment of this concurrent sentence has been upheld on appeal by the Third Circuit.

Even though Defendant proffered a statement to the Government fully admitting his involvement in the instant offense, and formally admitted his guilt to the charges, under the Guidelines Defendant's obstruction of justice negates consideration of Defendant's acceptance of responsibility.[18] Thus, Defendant's adjusted of-

---

11. Defendant has been convicted in the Eastern District of Pennsylvania of conspiracy to tamper with a federal witness. Defendant's former attorney, Daniel J. Seal II, Esq., named as his co-defendant, attempted (on behalf of Paz) to persuade Clanton to provide false testimony to a federal grand jury in an attempt to acquire a downward departure motion pursuant to § 5K1.1 in the instant matter. Defendant attempted to obstruct the sentencing in this matter by earning a 5K1.1 motion based on false testimony to a federal grand jury. Defendant's conviction and sentence for witness tampering has been affirmed on appeal. Defendant's life sentence for homicide is presently on appeal in Pennsylvania Superior Court.

12. *See* 08/08/05 N.T. at 12.

13. As described in more detail below, the Court lowered Defendant's offense level by three points. *See id.* at 23–24.

14. *See* U.S.S.G. §§ 3D1.2(b), 3D1.3. Count three is excluded from the grouping because it calls for a consecutive mandatory minimum term of imprisonment. *See* § 2K2.4, App. Note 3.

15. *Id.* § 2B3.1.

16. *Id.* §§ 2B3.1(b)(1), 2B3.1(b)(7)(B).

17. *Id.* § 3C1.1. The Government then chose not to file a 5K1.1 motion because of Defendant's attempt to obstruct the sentencing in this case.

18. *Id.* § 3E1.1, Application to Note 4 (conduct resulting in enhancement under § 3C1.1

fense level is twenty-five.

The maximum statutory sentence for armed bank robbery is 25 years imprisonment and a $250,000 fine. The maximum statutory sentence for conspiracy to commit armed bank robbery is five years imprisonment and a $250,000 fine. The maximum statutory sentence for using and carrying a firearm during a crime of violence is life imprisonment with a mandatory minimum of seven years, consecutive to any other term of imprisonment, and a $250,000 fine.

Because Defendant has been convicted of at least two crimes of violence, the instant offenses are crimes of violence, and because Defendant was 18 years or older at the time of the commission of the offenses, he is a career criminal within the meaning of U.S.S.G. § 4B1.1. The offense level determined under Section 4B1.1 is thirty-seven, because it is based on the statutory maximum penalty for count three rather than the lower level calculated for the grouping of counts one and two.

Defendant's adult convictions amount to twenty-one criminal history points.[19] Two points are added because Defendant committed the instant offense while on parole with the Commonwealth of Pennsylvania.[20] One point is added because Defendant committed the offense less than two years following his release from prison.[21] Under the Sentencing Guidelines, the total of Defendant's criminal history points is twenty-

four. Since he is a career offender, his criminal history category is VI.[22]

Based on Defendant's total offense level of thirty-seven and criminal history category, the Guidelines recommended sentence is 360 months to life, plus eighty-four months consecutive.[23] The PSR recommended a sentence within the Guidelines range.[24]

## B. Defendant's Request for A Downward Deduction

Post-*Booker*, it is not clear whether the courts must entertain requests for downward deductions as motions, at the resentencing there was some confusion regarding the precise terminology for Defendant's request for a sentence below the Guidelines.[25] However, it is clear that the Court, after considering the advisory Guidelines range, may impose a lower (or higher) sentence, if such a sentence is reasonable in light of factors identified by the *Booker* Court.

At the resentencing, Defendant's counsel urged the Court to impose a sentence below the range recommended by the Guidelines, based on Defendant's acceptance of responsibility for the instant offenses and his post-arrest cooperation with the Government. Defendant asked the Court "to reduce that 360 month sentence," not on the Guidelines factors "but rather viewing the Guidelines as advisory and saying that maybe in this case they don't adequately address the situation facing the Court."[26] Stated another way, Defendant did not

ordinarily indicates that the defendant has not accepted responsibility).

19. *See id.* §§ 4A1.1–1.2; Revised PSR at 5–12.

20. *See id.* § 4A1.1(d).

21. *See id.* § 4A1.1(e).

22. U.S.S.G. Ch. 5, Part A (thirteen or more criminal history points); §§ 4B1.1–1.2.

23. *Id.* Ch. 5, Part A.

24. The revised PSR and the pre-*Booker* 2003 PSR recommended the same sentence range.

25. *See* 08/08/05 N.T. at 9, 11.

26. *Id.* at 21:24–22:3.

request a downward departure under the Guidelines, but asked the Court to consider Defendant's various actions and circumstances of this matter and to impose a more "reasonable" sentence pursuant to 18 U.S.C. § 3553(a).

Most of Defendant's objections to the PSR's reliance on his obstruction of justice conduct, including his *Apprendi* objection to the two point enhancement of Defendant's sentence range, have become moot since the Defendant has been convicted and sentenced on the charges of witness tampering and the conviction was affirmed on appeal.[27] Nonetheless, at the resentencing the Court asked counsel to address the issue presented by the finding of obstruction of justice, since it not only added two points to the sentence range but also eliminated a three-point deduction for Defendant's acceptance of responsibility.[28]

Defendant's counsel argued that the obstruction of justice finding should not have deprived him of the benefits of his acceptance of responsibility and cooperation, because prior to Defendant's attempt to tamper with Clanton's testimony, Defendant cooperated with the Government, providing leads and contributing to certain investigative activities.[29]

The Court agreed and, exercising its discretion, reconsidered its prior ruling on Defendant's objection to the PSR on this issue.[30] Specifically, the Court granted Defendant a two-point deduction for his acceptance of responsibility, and an additional point deduction for a timely notification of plea.[31] The Court did so recognizing that prior to attempting to tamper with Clanton's testimony, Defendant made efforts to cooperate with the Government.[32] The Court also took note of the fact that the Government did not object to Defendant's deduction request, neither in its memoranda nor at sentencing.[33] The Court found that granting the request was proper in light of Defendant losing his chance to receive a 5K1.1 motion.[34] The

---

27. *See Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (prohibiting sentencing enhancements for unproven or unadmitted elements of crimes).

28. 08/08/05 N.T. at 13:6–11.

29. 08/08/05 N.T. at 16.

30. There was no plea agreement during Defendant's 2003 sentencing because Defendant entered an "open" or a "straight up" plea. 06/09/03 N.T. at 14. However, Defendant's plea was the reason for the Government's acquiescence to Defendant's request for a three-point downward departure based on his acceptance of responsibility, despite Defendant's conviction for obstruction of justice. *Id.* at 15. The Government acknowledged that the Court was not bound by this acquiescence and it was within the Court's discretion to grant Defendant's request. *Id.* at 15. At the 2003 sentencing the Court denied the request because it felt that any acceptance of responsibility was completely undermined by Defendant's attempt to tamper with witnesses and obstruct his sentencing. *Id.* at 17–18, 20:8–13.

31. 08/08/05 N.T. at 22:24–23:3.

32. *See id.* at 20–21.

33. *See id.* at 14, 23.

34. *Id.* at 23:9–12. Defendant also argued that his obstruction of justice should not be considered in this case because this conduct did not hinder the prosecution of the instant offenses, and Defendant has already been convicted and sentenced on the underlying witness tampering charges by Chief Judge Giles. *Id.* at 16–17. However, the Court rejected these arguments because, as the Government emphasized, Defendant's conduct was also an attempt to obstruct sentencing in this case by garnering a 5K1.1 motion. *See id.* at 20. Additionally, Chief Judge Giles ran Defendant's sentence on charges of witness tampering concurrent to this Court's first sentence in this matter, because the Court found obstruction of justice. *See id.* at 17. Since Defendant's witness tampering conviction has been affirmed by the Third Circuit, the Court sees no reason to overrule the Guidelines' recommended two-point upward adjustment. *See also id.* at 20–21.

Government also does not object to the Court's reconsideration.

Thus, the Court calculated Defendant's appropriate offense level as thirty-four. Together with Defendant's criminal history category VI, the recommended Guidelines sentence becomes 262 months to 327 months.[35]

## C.  Other Factors

Once the Court established the appropriate range under the advisory Guidelines, it listened to any evidence relevant under 18 U.S.C. 3553(a) and *Booker*, and thoroughly addressed each piece of evidence on the record.  Defendant's counsel again asked the Court to consider Defendant's cooperation with the Government as separate from his tampering with a witness, and asked for a sentence "even lower than [the low end of the Guideline range]."[36]

The Court admitted into the record a positive character reference letter for Defendant.[37]  One new piece of information before the Court concerned Defendant's conviction and life sentence in state court on charges of homicide and related offenses.[38]  However, the Court chose not to depart upward based on this new information.  The Court instead chose to impose the sentence in this matter concurrent to Defendant's life sentence because the Court wanted "to create a reasonable sentence," i.e. "one that [Defendant] can serve, not one that he will never be able to serve," despite Defendant's extensive criminal record and his behavior.[39]

In crafting a sentence that meets the goals of 18 U.S.C. § 3553(a), the Court also considered Defendant's "prominent criminal record."[40]  At the age of thirteen Defendant was charged in juvenile court with two counts of robbery, theft, receiving stolen property, terroristic threats, and conspiracy.[41]  He was adjudicated delinquent and committed to a delinquent institution.  He had been in and out of delinquent institutions, escaping from one and failing to return from a weekend pass at another, until he was arrested as an adult on new charges.  Defendant has been arrested a total of thirty five times, with eighteen adjudications and/or convictions, most often on charges of robbery, aggravated assault, burglary, theft, receiving stolen property, conspiracy, criminal trespass and criminal conspiracy.  He had been sentenced to serve six to twenty years in prison on several robbery and burglary charges in Pennsylvania state courts, and was incarcerated for thirteen years until he was paroled on June 20, 2000.  Most recently, Defendant was convicted and sentenced to life on a charge of homicide.

The Court also considered the seriousness of Defendant's instant offense and its just punishment, the need to deter not only Defendant but to protect the public from further crimes by Defendant, as well as the need to rehabilitate Defendant.[42]  The Court noted that Defendant may not know how to truly reform, and concluded that a lengthy period of incarceration providing access to all available educational, employment, skills-building, judgment and

---

**35.**  U.S.S.G. Ch. 5, Part A.

**36.**  *Id.* at 25, 34.

**37.**  08/08/05 N.T. at 24–25.

**38.**  *Id.* at 30–31.

**39.**  *Id.* at 37:8–10, 37:18, 38, 42:1–8.

**40.**  *Id.* at 41:12–25.

**41.**  Defendant was first arrested when he was eleven years old, on charges of theft, receiving stolen property and conspiracy, with no adjudication.

**42.**  *Id.* at 42:12–43:3.

decision-making programs was necessary to adequately protect the public as well as rehabilitate Defendant.[43]

The Court sentenced Defendant to sixty months imprisonment on count one, two hundred and ten months on count two, and eighty-four months on count three, all consecutive to each other for a total of three hundred and fifty-four months. The Court reduced the recommended fine from $2,500 to $1,500.[44] In drafting the sentence, the Court considered all factors relevant under the facts and circumstances of this case, including Defendant's cooperation and acceptance of responsibility.[45] The Court chose to impose count one and two as consecutive sentences which placed Defendant's total sentence in the advisory Guidelines range of 262 months to 327 months.[46] While this Circuit has not yet determined whether a properly calculated advisory Guidelines range is a "presumptively reasonable" sentence, in this case consideration of Defendant's personal history and characteristics, as well as the violent nature of his acts, leads the Court to conclude that a lesser sentence would belittle the seriousness of Defendant's crimes.

Accordingly, the Court believes Defendant's sentence is reasonable given all of the factors listed above, including Defendant's guilty plea, the circumstances of his crime, and his personal history. While the sentence is severe, the Court finds that it is *minimally* necessary to achieve the purposes of the sentencing statute.

---

43. *Id.* at 42:24–43:15, 44:14–17.

44. *Id.* at 46:12–18.

45. *See id.* at 44:12–14.

46. *See id.* at 47–48 (counts one and two to ran consecutively to achieve a total sentence of 270 months, followed by eighty-four months consecutive on count three).