

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-30-2008

# USA v. Acosta

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2506

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Acosta" (2008). *2008 Decisions.* Paper 956.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/956

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-2506
_____

UNITED STATES OF AMERICA

v.

JOAQUIN R. ACOSTA,

Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 05-cr-00020)
District Judge:  The Honorable Kim R. Gibson

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
June 3, 2008

Before:  FISHER and JORDAN, *Circuit Judges*, and YOHN,[*] *District Judge*.

(Filed: June 30, 2008)
_____

OPINION

_____

_____

[*]The Honorable William H. Yohn, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

YOHN, *District Judge*.

Joaquin Acosta pleaded guilty to possession with the intent to distribute 500 grams or more of cocaine and possession with the intent to distribute 50 grams or more of methamphetamine. Each of these offenses carries a mandatory minimum sentence of 60 months in prison. 21 U.S.C. § 841(b)(1)(B). At sentencing, the government opposed application of the "safety valve" provision, 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2, pursuant to which the District Court could have imposed a sentence below the statutory minimum. The government argued that Acosta had been untruthful and incomplete in proffering information regarding the circumstances of his offense. At the sentencing hearing, after Acosta testified and defense counsel argued for application of the safety valve provision, the District Court concluded that Acosta did not qualify for the safety valve provision and thus imposed the mandatory minimum sentence. On appeal, Acosta argues that the District Court erred in reaching its conclusion and by not holding a separate evidentiary hearing to determine Acosta's truthfulness. We will affirm.

## I. Factual & Procedural Background

Acosta was arrested while driving a Jaguar owned by Miguel Padilla containing 999 grams of cocaine and 383 grams of methamphetamine.[1] (R. at 29-30.) At the time of

---

[1]Police received information that the Jaguar, bearing North Carolina plates, was used to transport drugs from North Carolina to Altoona, Pennsylvania. Police pulled the vehicle over after watching it twice cross the centerline and travel at speeds exceeding the speed limit. Police searched the vehicle with Acosta's permission, uncovering the drugs.

his arrest, Acosta admitted that he knew about the cocaine but not about the methamphetamine. Acosta entered into a plea agreement with the government and pleaded guilty to possession with the intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(ii)(II) and possession with the intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii). (R. at 90.) As part of his plea agreement, Acosta promised to cooperate with authorities. (*Id.* at 90-91.) In exchange and conditioned on the United States Attorney's satisfaction that Acosta complied with the conditions set forth in § 3553(f), including the condition that Acosta provided "all information he has concerning the offense to which he has pleaded guilty and all other offenses that were part of the same course of conduct or a common scheme or plan," the United States Attorney agreed to recommend that Acosta receive the benefit of the safety value provision. (R. at 91-93.) Acosta also agreed to waive his right to appeal his conviction and sentence pursuant to 28 U.S.C. § 1291 or 18 U.S.C. § 3742, unless the government appealed the sentence, the sentence exceeded the statutory limits, or the sentence unreasonably exceeded the guideline range determined by the court. (R. at 91.)

During the plea colloquy, the District Court repeatedly asked Acosta whether he understood the terms and conditions of his plea agreement relating to his waiver of appellate rights and allowed Acosta the opportunity to discuss the appellate waiver provision with his attorney. (*Id.* at 12-14, 16-18.) After consulting with his attorney

3

through an interpreter, Acosta stated to the court that he understood the waiver. (*Id.* at 18.) The District Court engaged Acosta in a detailed colloquy and accepted Acosta's admission of guilt, finding that Acosta entered a knowing and voluntary plea supported by an independent basis in fact. (*Id.* at 33.) The court then directed the Probation Office to prepare a pre-sentence report ("PSR").

While incarcerated, Acosta met with Assistant United States Attorney John Valkovci and a Pennsylvania State Trooper as part of his promise to cooperate. (*Id.* at 57-59.) The PSR nonetheless concluded that Acosta failed to comply with the fifth criterion of U.S.S.G. § 5C1.2 because he had "not yet truthfully provided to the Government all information and evidence he has concerning the offense" and that he thus did not qualify for the safety valve provision. (PSR ¶ 14.) Acosta objected to this conclusion, and the District Court decided to "defer ruling on this matter until the time of sentencing so that it may take evidence and make findings of fact as to the issue of the Defendant's compliance with U.S.S.G. § 5C1.2." (Appellant's App. at 8.)

At sentencing, the District Court asked Acosta's attorney how he wished to proceed. (R. at 50.) Acosta's attorney responded that

> I was prepared to basically incorporate all the documents that the Court would already have before it. I would go through a little bit about the factual situation leading up to the arrest and the charging, and indicating what we believe would be circumstantial and/or other cooperating evidence that would, I believe, show that he has been truthful in his dissertation and dissemination of information to the United States . . . .

4

(*Id.* at 50-51.) After verifying that it had received all pertinent documents identified by the defense, the District Court instructed Acosta's attorney to proceed and stated that "[i]f you wish to present any sort of evidence on that particular issue, you can do so." (*Id.* at 52.) As part of the presentation of his case, Acosta asserted that when the prosecutor and police officers visited him in jail "[a]ll I did was tell [them] the truth." (*Id.* at 56.)

The government presented its case in response. According to Valkovci, during the proffer session, Acosta refused to reveal the source of the drugs found in his possession. (*Id.* at 58.) Acosta admitted, in contrast to his earlier statement, that he knew that the car contained both cocaine and methamphetamine. (*Id.*) Acosta, however, refused to provide information about how the drugs got in the car or how he got possession of the car and car keys. (*Id.* at 64.) He identified Padilla as the only other person he knew to be involved in the drug distribution operation. (*Id.* at 58-59.)

Valkovci then questioned Acosta about the people he knew in Altoona or western Pennsylvania. Acosta said he knew "nobody really because he was from North Carolina." (*Id.* at 59.) He stated that he only knew Padilla and Padilla's family. (*Id.*) When Valkovci told him that the police had information that he had contacts in the area, Acosta was "adamant" in his denial. (*Id.* at 62.) When specifically confronted with a three-way call involving Amanda Bianconi and another individual and with a separate conversation with Travis Shoemaker, Acosta admitted that he had contact with these individuals. (*Id.* at 71.) Valkovci repeatedly questioned whether Acosta knew anybody else in the Altoona

or western Pennsylvania and, when Acosta replied negatively, asked "are you sure because there are other people we think you're in contact with." (*Id.* at 72.) Acosta responded "no" to each question. (*Id.*) At this point, Valkovci and the Trooper realized that Acosta was not going to provide them with any independent information about his offense or related offenses that they could investigate and corroborate through their other sources. (*Id.* at 71.)

Valkovci also testified that prison records revealed that Acosta engaged in numerous telephone calls with individuals in Altoona and the regional calling area, including Bianconi, Shoemaker, a person named Chinito, and three unnamed persons. (*Id.* at 59-61.) In addition, Acosta received mail from several individuals living in Pittsburgh and Johnstown, Pennsylvania, including Maratina Vermillian, Ashley Alwine, Tim Hollingsworth, and Pamela Jones. (*Id.* at 61.)

The court granted Acosta the opportunity to respond to the government's evidence and address his truthfulness. (*Id.* at 68.) Acosta's attorney argued that Acosta was truthful when answering direct questioning; that Acosta merely forgot to mention a handful of names unrelated to his offense; that Bianconi was Padilla's wife, Shoemaker was their babysitter, and Chinito was an ex-boyfriend of a woman who became friends with Acosta while he was in prison; and that the government had not proven that any information Acosta provided was false. (*Id.* at 64-75.) Acosta also testified, explaining

6

that one of the telephone calls was to the woman who visited him in prison and denying that he wrote to anybody in Pittsburgh or Johnstown.  (*Id.* at 68-69.)

After hearing this evidence, the District Court found that Acosta "failed to establish that he truthfully provided the Government all information and evidence he had concerning the offense or offenses that were part of the same course of conduct or of the common scheme or plan." (*Id.* at 75.)  Acosta thus failed to qualify for the safety valve provision.  (*Id.*)  The court then sentenced him to the statutory minimum of sixty months' imprisonment.  (*Id.* at 84.)  Acosta appeals that decision.

## II.  Jurisdiction & Standard of Review

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231.  We have jurisdiction of appellant's direct appeal of his final judgment of conviction and sentence pursuant to 28 U.S.C. § 1291.  We review waivers of appellate rights *de novo*.  *United States v. Khattak*, 273 F.3d 557, 560 (3d Cir. 2001).  Unpreserved issues are reviewed for plain error.  *United States v. Gordon*, 290 F.3d 539, 542-43 (3d Cir. 2002).  Otherwise, we review the District Court's findings of fact for clear error and its application of law to fact *de novo*.  *United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007) (*en banc*); *United States v. Sabir*, 117 F.3d 750, 754 (3d Cir. 1997).

## III.  Discussion

Acosta argues that the District Court erred in finding that he was not truthful for purposes of the safety valve provision and erred by not holding a separate evidentiary

7

hearing.  The government responds by arguing that (1) Acosta waived his right to appeal in his plea agreement, precluding our review of the merits, and (2) if we consider the merits, that the District Court was correct in its legal conclusions and in not holding a separate evidentiary hearing.  We will affirm.

### A.    Waiver of Appeal

Acosta waived his right to appeal in his plea agreement.  "[A]bsent the unusual circumstance where an error amounting to a miscarriage of justice may invalidate the [waiver]," a "waiver[] of appeal[], if entered into knowingly and voluntarily, [is] valid." *Khattak*, 273 F.3d at 562.  Although the "court retains subject matter jurisdiction over the appeal by a defendant who had signed an appellate waiver, . . . we will not exercise that jurisdiction to review the merits of [the] appeal if we conclude that [the defendant] knowingly and voluntarily waived [his] right to appeal unless the result would work a miscarriage of justice." *United States v. Gwinnett*, 483 F.3d 200, 203 (3d Cir. 2007); *see also United States v. Shedrick*, 493 F.3d 292, 297 (3d Cir. 2007).  Acosta bears the burden of demonstrating compelling reasons for us to review the merits of his appeal.  *Khattak*, 273 F.3d at 263 ("To avoid dismissal of appeal, Defendant must show why we should not enforce the waiver provision of the plea agreement." (internal quotation marks and citation omitted)).

We review the sentencing judge's colloquy under Federal Rule of Criminal Procedure 11 to determine whether a waiver of appeal is "knowing and voluntary." *Id.*

8

"Before accepting a plea of guilty . . ., the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands . . . the terms of any provision in a plea agreement waiving the right to appeal or to collaterally attack the sentence." Fed. R. Civ. P. 11(c)(6).

Acosta fails to present any argument that his plea did not constitute a knowing and voluntary waiver of his right to appeal. During the plea colloquy, the District Court repeatedly asked Acosta whether he understood the terms and conditions of his plea agreement relating to his waiver of appellate rights and allowed Acosta the opportunity to discuss the appellate waiver provision with his attorney. (R. at 12-14, 16-18.) After consulting with his attorney, Acosta stated to the court that he understood the waiver. (*Id.* at 18.) The District Court thus satisfied Rule 11 and properly found that Acosta's plea, including his waiver of his right to appeal, was knowing and voluntary. There is simply no evidence on which to question this finding.

To determine whether a sentencing error warrants vacating an otherwise valid waiver of the right to appeal, the "governing standard . . . is whether the error would work a miscarriage of justice." *Khattak*, 273 F.3d at 563. The we consider factors such as

> [t]he clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result.

*Id.* (citation omitted).

9

Acosta also fails to present any argument that the District Court's purported error amounted to a miscarriage of justice that would invalidate his waiver. Acosta has alleged two errors by the District Court—finding that Acosta was not completely truthful for the purposes of the safety valve provision and failing to hold a separate hearing before ruling on his truthfulness. Even if the court erred, which, as discussed below, it did not, our refusal to correct these purported errors would not result in a miscarriage of justice. Generally, "[a] waiver of the right to appeal . . . includes a waiver of the right to appeal blatant error." *Id.* at 561 (quoting *United States v. Howle*, 166 F.3d 1166, 1169 (11th Cir. 1999)). The purported errors here give rise to few of the factors that we consider relevant. The purported errors were by no means clear. They concerned predominately the District Court's factual determinations, which we review only for clear error, and the District Court's procedural decision not to hold a separate evidentiary hearing, which we review only for abuse of discretion. The defendant, who was represented by private counsel, did not object at the time of the determination and was allowed to and did participate in the evidentiary hearing at sentencing. If there was any error, the remedy Acosta seeks—remand for an evidentiary hearing—may not even benefit him, as he has presented us with no evidence not previously available to the District Court that would result in his qualification for the safety valve provision. The government, of course, would be forced to re-litigate an issue that it already fully briefed before the District

10

Court. Acosta simply cannot sustain his burden of demonstrating that our decision to forgo review of the merits of his appeal will result in a miscarriage of justice.

## B. Merits

Although we dispose of the case based on Acosta's waiver of his right to appeal, we also note that appellant's arguments on the merits are frivolous. The defendant bears the burden to meet each of five criteria to receive the benefit of the safety valve provision. *Sabir*, 117 F.3d at 754. Only the fifth safety value criterion is disputed in this case. It provides that:

> not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

§ 3353(f)(5); U.S.S.G. § 5C1.2. The court denied Acosta the benefit of the safety valve provision because Acosta "failed to establish that he truthfully provided the Government all information and evidence he had concerning the offense or offenses that were part of the same course of conduct or of the common scheme or plan." (R. at 75.)

Appellant's argument that the District Court erred when it found that he was not completely truthful lacks merit. We review the District Court's factual findings as to whether the defendant has satisfied each safety valve condition for clear error. *See Grier*, 475 F.3d at 570; *Sabir*, 117 F.3d at 754. The District Court heard testimony regarding

11

Acosta's inconsistencies about the source of the drugs, refusal to provide information about how he came to possess the car, and failure to be forthcoming about his contacts in Pennsylvania. Although Acosta offered explanations for a few of these inconsistencies, he did not present any information drawing into question the District Court's factual findings. The District Court's factual findings that Acosta was neither truthful nor forthcoming with all information and evidence that he had concerning his offense were not clearly erroneous. Exercising plenary review of the application of the safety valve provision to these factual findings, we conclude that the District Court did not err in holding that Acosta did not qualify for the safety valve provision.

Furthermore, appellant's argument that the District Court erred by failing to hold an additional evidentiary hearing is frivolous in law and fact. During sentencing, "the District Court is free to use its ordinary discretion in handling the various procedural issues (such as the admission of additional evidence) that may arise." *United States v. Miller*, 417 F.3d 358, 363 (3d Cir. 2005). While Acosta argues "no evidentiary hearing was held on the matter" (Appellant's Br. 10), the record is clear that the District Court held an evidentiary hearing regarding Acosta's qualification for the safety value provision. (R. at 45-75.) After giving Acosta notice that evidence about his qualification for the safety valve provision would be considered during the sentencing hearing (Appellant's App. at 8), the District Court offered Acosta the opportunity at that hearing to present his case as he wished. (R. at 50-52, 68.) The court allowed Acosta to present

12

evidence, to testify, and to argue regarding his qualification for the safety value provision. Acosta took the opportunity to do so and has not provided us with any evidence or argument that he was not allowed to present to the District Court. Furthermore, Acosta did not request a separate hearing on the issue, dispelling any argument that the court should have held an additional hearing.

For the foregoing reasons, we will affirm the District Court's judgment.