

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-6-2006

# USA v. Grier

Precedential or Non-Precedential: Precedential

Docket No. 05-1698

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Grier" (2006). *2006 Decisions.* Paper 803.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/803

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-1698

———

UNITED STATES OF AMERICA

v.

SEAN MICHAEL GRIER,

Appellant

———

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 03-cr-00284)
District Judge:  Honorable Sylvia H. Rambo

———

Argued October 25, 2005
Before:  SCIRICA,[*] *Chief Judge*, SLOVITER
and FISHER, *Circuit Judges*.

———

[*]This appeal was argued before the panel of Judges
Sloviter, Fisher and Rosenn.  The coram was reconstituted to
include Chief Judge Scirica after the death of Judge Rosenn.

(Filed June 6, 2006)

Ronald A. Krauss (Argued)
Office of Federal Public Defender
100 Chestnut Street, Suite 306
Harrisburg, PA  17101
        *Attorney for Appellant*

Christian A. Fisanick (Argued)
Office of United States Attorney
235 North Washington Avenue, Suite 311
P.O. Box 309
Scranton, PA  18501

Theodore B. Smith, III
Eric Pfisterer
Kimberly A. Kelly
Office of United States Attorney
228 Walnut Street
220 Federal Building and Courthouse
P.O. Box 11754
Harrisburg, PA  17108
        *Attorneys for Appellee*

———

OPINION OF THE COURT

———

FISHER, *Circuit Judge*.

The Supreme Court held in *United States v. Booker*, 543 U.S. 220 (2005), that facts relevant to the advisory United States Sentencing Guidelines do not implicate the constitutional right to trial by jury. We now confirm that these facts likewise do not implicate the constitutional right to proof beyond a reasonable doubt.

## I.

It all started with a lost bicycle. The bike was owned by Juan Navarro but had been commandeered by his sister. She was holding it, with the support of her boyfriend, Sean Michael Grier, as a form of security against Navarro's promise to pay a cable bill. Navarro did not approve of this arrangement.

He confronted Grier and demanded the bike. Grier refused. Navarro said: "[T]here's gonna be some problems if I don't have my bike back." Grier responded: "[L]et the problem be right here and now."

Navarro swung at Grier. The punch did not connect, and the two men fell struggling to the ground. Several witnesses warned Navarro that Grier had a gun. A shot was fired. The two men separated, with Grier holding the gun. Neither had been struck by the bullet or sustained serious injury.

Grier pointed the gun at Navarro. Navarro attempted to rush at Grier but was held back by other individuals. Grier

pointed the gun upward and fired a single shot. Both men then left the scene. Grier discarded the firearm in a nearby trash can.

A police investigation ensued. Officers found the discarded gun, and a background check revealed that it had been stolen. Grier was soon arrested on state charges of aggravated assault, receiving stolen property, and unlawful possession of a firearm. These counts were dismissed in August 2003.

Grier was subsequently charged by federal indictment with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and possession of a stolen firearm, in violation of 18 U.S.C. § 922(j). He pled guilty to the first count; the second count was dismissed pursuant to a plea agreement.

A presentence report was prepared. It found that Grier's conduct during the altercation with Navarro constituted the felony offense of aggravated assault under Pennsylvania law, *see* 18 Pa. Cons. Stat. § 2702,[1] and that the offense had been

---

[1]Pennsylvania law defines aggravated assault as follows:
A person is guilty of aggravated assault if he:
> (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; [or]
> . . . .
> (4) attempts to cause or

4

committed in connection with the crime of conviction (unlawful possession of a firearm). This finding resulted in a four-level enhancement in Grier's offense level under the United States Sentencing Guidelines, raising it from 23 to 27, *see* U.S. Sentencing Guidelines Manual § 2K2.1(b)(5), and a fifty percent increase in the recommended imprisonment range, raising it from 84 to 105 months to 120 to 150 months, *see id.* ch. 5, pt. A. The final Guidelines range, in light of the statutory maximum sentence of ten years, *see* 18 U.S.C. § 924(a)(2), was 120 months. *See* U.S. Sentencing Guidelines Manual § 5G1.1.

Grier objected to the four-level enhancement, and a sentencing hearing was held on February 25, 2005. The parties argued briefly over the correct burden of proof. Defense counsel claimed that the reasonable-doubt standard should apply while counsel for the government maintained that a preponderance standard should govern. The district judge agreed with the government: "I believe that the standard currently is preponderance, [and] until [I have] something more definitive from the Court of Appeals, it's what I'll use."

The only witness to testify at the hearing was Navarro. He described the altercation and stated that he had not possessed a firearm or any other weapon on his person at the time. He

---

intentionally or knowingly causes bodily injury to another with a deadly weapon . . . .

18 Pa. Cons. Stat. § 2702(a).

5

admitted, however, that he had not seen Grier "pull" the gun from his clothing:

> I don't know if the gun fell out [of Grier's pockets] or whatever. People was telling me that he was taking the gun out. And from there, that's when everybody tried to get the gun away from him.

Defense counsel argued that the enhancement should not apply because Grier had acted in self-defense. She also asserted that, under Pennsylvania law, Grier was guilty not of aggravated assault but of "simple assault by mutual consent," a lesser-graded version of simple assault punishable by imprisonment for one year or less. *See* 18 Pa. Cons. Stat. §§ 1104, 2701.[2] This

---

[2]Pennsylvania law defines simple assault, including the exception for mutual consent, as follows:

(a) Offense defined.–A person is guilty of assault if he:

(1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another;

(2) negligently causes bodily injury to another with a deadly weapon; [or]

(3) attempts by physical menace to put another in fear of imminent serious bodily injury . . . .

6

crime is not considered a "felony" under the Guidelines, *see* U.S. Sentencing Guidelines Manual § 2K2.1 cmt. n.1, and would not support the enhancement.

The District Court adopted the presentence report, including the finding of aggravated assault and concomitant enhancement. It also granted a downward departure of two offense levels "in light of [Navarro's] conduct, which was partly responsible for the four[-]point enhancement." With this departure, the range of imprisonment prescribed by the Guidelines was reduced to 100 to 120 months.

The District Court recognized that the Guidelines were advisory but nevertheless imposed a term of imprisonment of 100 months, within the recommended range. It justified this sentence in a single statement: "The Court believes that 100 months is reasonable in view of the considerations of [18 U.S.C. §] 3553(a)." Defense counsel did not object to the District Court's explanation for the sentence.

This timely appeal followed. Grier argues that the District Court erred in applying a preponderance standard to facts relevant to the four-level enhancement, in finding that he

---

(b) Grading.–Simple assault is a misdemeanor of the second degree unless committed . . . in a fight or scuffle entered into by mutual consent, in which case it is a misdemeanor of the third degree . . . .

18 Pa. Cons. Stat. § 2701.

7

had committed aggravated assault under Pennsylvania law, and in imposing sentence without fully articulating its consideration of the factors under 18 U.S.C. § 3553(a). We have jurisdiction over these claims under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291. *See United States v. Cooper*, 437 F.3d 324, 327-28 & n.4 (3d Cir. 2006).

## II.

There is no doubt that *Booker*, by rendering the United States Sentencing Guidelines advisory rather than mandatory, "brought about sweeping changes in the realm of federal sentencing." *United States v. Davis*, 407 F.3d 162, 163 (3d Cir. 2005). But there is every reason to believe that the Supreme Court intended that the practices that have guided us and other courts in the twenty years since the Guidelines were first promulgated would continue to govern sentencing in the federal courts.

Under an advisory Guidelines scheme, district courts should continue to make factual findings by a preponderance of the evidence and courts of appeals should continue to review those findings for clear error. The only change in the equation is that, at the end of the day, the district court is not bound by the recommended Guidelines range and the court of appeals must decide whether the final sentence is "reasonable."

## A.

The primary issue in this case is whether the Due Process Clause requires facts relevant to enhancements under the United

8

States Sentencing Guidelines, particularly those that constitute a "separate offense" under governing law, to be proved beyond a reasonable doubt. The Supreme Court did not reach this issue in *Booker*, *see* 543 U.S. at 259, and we declined to address it in *United States v. Cooper*, 437 F.3d 324 (3d Cir. 2006), *see id.* at 330 & n.7. Nevertheless, we believe that the discussion in *Booker* regarding the Jury Trial Clause of the Sixth Amendment applies with equal force to the Due Process Clause of the Fifth Amendment. *See Apprendi v. New Jersey*, 530 U.S. 466, 484 (2000) (discussing these "associated" provisions). That a defendant does not enjoy the right to a jury trial under *Booker* ineluctably means that he or she does not enjoy the right to proof beyond a reasonable doubt.

1.

The constitutional guarantees of "trial . . . by an impartial jury," U.S. Const. amend. VI, and "due process of law," U.S. Const. amend. V, stand as a bulwark of individual liberty. They interpose between the legislature and the court the community's own judgment as to the existence of a crime. Only if a jury of an individual's peers concludes beyond a reasonable doubt that he or she committed each element of the charged offense, as defined by the legislature, may the court impose punishment. *Booker*, 543 U.S. at 230 (citing *United States v. Gaudin*, 515 U.S. 506, 511 (1995)).

This principle is rooted in common law considerations of fundamental fairness. *See, e.g.*, *Blakely v. Washington*, 542 U.S. 296, 301-02, 305-07, 311-12 (2004); *Apprendi*, 530 U.S. at 476-77; *Harris v. United States*, 536 U.S. 545, 556-68 (2002)

9

(plurality opinion).  Individuals must be provided notice of the consequences of their conduct.  They must be informed of the nature of illegal acts, through legislative definition of the elements of punishable crimes, and of the possible sentences for those offenses upon conviction.  *See Blakely*, 542 U.S. at 301-02, 306-07, 311-12; *Apprendi*, 530 U.S. at 476-77, 489-94; *Harris*, 536 U.S. at 556-68.  An individual who is provided such notice and is nevertheless found by a jury beyond a reasonable doubt to have engaged in illegal conduct has no grounds to complain when the maximum punishment authorized by the legislature is meted out by a judge.  *See Blakely*, 542 U.S. at 304-05, 309; *Harris*, 536 U.S. at 556-68.

Individuals have the right under the Fifth and Sixth Amendments to demand that each and every element of the alleged crime be submitted to a jury and proved beyond a reasonable doubt before sentence is imposed.  It follows, then, that the fundamental question for these purposes is what facts constitute the "elements" of a "crime."

The answer was provided in *Apprendi v. New Jersey*, 530 U.S. 466 (2000):  The facts constituting the elements of a crime are those that increase the maximum punishment to which the defendant is exposed under governing law.  *Id.* at 490.  This conclusion was based on a simple syllogism.  A crime is defined as conduct that is punishable by the state.  Conduct is punishable by the state when it exposes the individual to new or additional penalties.  Therefore, any conduct that exposes an individual to punishment or increases the maximum punishment to which he or she is otherwise exposed must be deemed a crime.  The predicate facts of such conduct constitute the "elements" of the

10

"crime." *Id.* at 483 & n.10, 485-86, 490, 493-94 & nn.18-19 (citing *Jones v. United States*, 526 U.S. 227, 244-48 (1999); *Mullaney v. Wilbur*, 421 U.S. 684, 697-98 (1975)); *see also id.* at 500-01 (Thomas, J., concurring).

It is to these facts, and to these facts alone, that the rights to a jury trial and proof beyond a reasonable doubt attach. "The Fifth and Sixth Amendments ensure that the defendant 'will never get more punishment than he bargained for when he did the crime,' but they do not promise that he will receive 'anything less' than that." *Harris*, 536 U.S. at 556-68 (quoting *Apprendi*, 530 U.S. at 498 (Scalia, J., concurring)). Once an individual has been convicted by a jury beyond a reasonable doubt of the predicate facts of illegal conduct, triggering a statutory maximum penalty, a court may impose any sentence on the individual up to that maximum. *Id.* Judicial factfinding in the course of selecting a sentence within the permissible range does not implicate or offend the Fifth and Sixth Amendment rights to a jury trial and proof beyond a reasonable doubt. *Blakely*, 542 U.S. at 309*; Harris*, 536 U.S. at 556-68; *Apprendi*, 530 U.S. at 481-82 (citing *Williams v. New York*, 337 U.S. 241, 242-47 (1949)); *McMillan v. Pennsylvania*, 477 U.S. 79, 89-90 (1986).

2.

The decision in *Booker* instantiates these principles. In *Booker*, a jury found the defendant guilty of possession with intent to distribute at least fifty grams of cocaine base, an offense that carried a maximum sentence of life imprisonment under the United States Code. 543 U.S. at 227 (citing 21 U.S.C.

11

§ 841(a)(1), (b)(1)(a)(iii)).   The United States Sentencing Guidelines, however, prescribed a base imprisonment range of 210 to 262 months.   *Id.* (citing U.S. Sentencing Guidelines Manual §§ 2D1.1(c)(4), 4A1.1).   During a sentencing hearing, the trial judge found by a preponderance of the evidence that the defendant had possessed an additional 566 grams of crack and had obstructed justice.   *Id.*   These findings increased the Guidelines imprisonment range to 360 months to life.   *Id.*   The judge then imposed a sentence commensurate with this range, of thirty years.   *Id.*

The Supreme Court reversed.   Of central importance to its conclusion was the mandatory nature of the Guidelines.   *Id.* at 233-35.   The Sentencing Reform Act required the district judge to impose a sentence within the "base" range recommended by the Guidelines, established solely by the facts of conviction, unless certain enumerated circumstances were found to be present.   *Id.* (citing 18 U.S.C. § 3553(b)).   In other words, upon conviction by a jury, the maximum punishment to which the individual was exposed was the highest point in the base range prescribed by the Guidelines.   *Id.*   The judge lacked authority to impose a higher sentence in the absence of additional findings of fact.   *Id.*

These additional facts, under the reasoning of *Apprendi*, constitute "elements" of a "crime."   By raising the recommended Guidelines range, they authorized the district judge to impose a higher sentence than would be permissible under the Sentencing Reform Act based solely on the facts of conviction.   *Id.*   They increased the maximum sentence to which the defendant would otherwise be exposed upon conviction by

12

a jury. *Id.* These facts are therefore properly classified as elements of a crime, subject to the rights to a jury trial and proof beyond a reasonable doubt. *Id.* (citing *Apprendi*, 530 U.S. at 481).

The final sentence imposed in *Booker* was nearly ten years more than the base range prescribed by the Guidelines. *Id.* The range had been increased based on findings made by the sentencing judge, without submission to a jury. *Id.* This violated the defendant's rights under the Sixth Amendment, as defined in *Apprendi*.

This conclusion not only necessitated reversal of the defendant's sentence; it cast doubt on the constitutionality of the federal sentencing regime as a whole. *See id.* The Guidelines require that all facts relevant to sentencing be found by a judge based on information presented during a post-trial hearing. *Id.* There is no provision for a jury to make these determinations, nor any reasonable means to effect this result within the existing structure. Trial by jury is inherently incompatible with the Guidelines scheme. *Id.*

The Court resolved this problem by returning to the basis of its holding: that the constitutional infirmity of the Guidelines was attributable to their mandatory application under the Sentencing Reform Act. All members of the Court agreed that, if the Guidelines were merely advisory, the Sixth Amendment problem would fall away. *Id.* at 259. Facts relevant to enhancements under the Guidelines would no longer increase the maximum punishment to which the defendant is exposed, but would simply inform the judge's discretion as to the

13

appropriate sentence. *Id.* These facts would then not be deemed "elements" of a "crime" and would not trigger the rights recognized in *Apprendi*. *Id.*

To achieve this result, the Court "sever[ed] and excise[d]" two statutory provisions: "the provision that requires sentencing courts to impose a sentence within the applicable Guidelines range (in the absence of circumstances that justify a departure), *see* 18 U.S.C. § 3553(b)(1),[3] and the provision that sets forth standards of review on appeal, including *de novo* review of departures from the applicable Guidelines range, *see* [18 U.S.C.] § 3742(e).[4]" *Booker*, 543 U.S. at 259. The

---

[3]Section 3553(b)(1) provided, in pertinent part, as follows:

> [T]he court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) [prescribed by the United States Sentencing Guidelines] unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.

18 U.S.C. § 3553(b)(1).

[4]Section 3742(e) provided, in pertinent part, as follows:
Upon review of the record, the court of appeals shall determine whether the sentence–
    (1)  was imposed in violation of law;

14

(2) was imposed as a result of an incorrect application of the sentencing guidelines;

(3) is outside the applicable guideline range, and . . . the sentence departs from the applicable guideline range based on a factor that . . . does not advance the objectives set forth in section 3553(a)(2)[,] . . . is not authorized under section 3553(b)[, or] . . . is not justified by the facts of the case; or . . . the sentence departs to an unreasonable degree from the applicable guidelines range, having regard for the factors to be considered in imposing a sentence[;] . . . or

(4) was imposed for an offense for which there is no applicable sentencing guideline and is plainly unreasonable.

The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and, except with respect to determinations under subsection (3)(A) or (3)(B), shall give due deference to the district court's application of the guidelines to the facts. With respect to determinations under subsection (3)(A) or (3)(B), the court of appeals shall review de novo the district court's application of the guidelines to the facts.

15

excision of these provisions rendered the Guidelines advisory, freeing the trial judge to impose any sentence permitted under the United States Code regardless of the sentence recommended by the Guidelines. *Id.* The maximum legislatively authorized punishment to which the defendant is exposed was no longer the maximum prescribed by the Guidelines; instead, it is the maximum prescribed by the United States Code. *Id.* Therefore, findings of fact relevant to the Guidelines need not be submitted to a jury. *Id.*

The Court noted that the "remainder of the Act 'function[s] independently.'" *Id.* (quoting *Ala. Airlines, Inc. v. Brock*, 480 U.S. 678, 684 (1987)). District courts must still conduct the full Guidelines analysis in every case. They must still resolve disputed issues of fact and explain the basis for any departures. The only change is that the final Guidelines range does not bind the district court, but merely serves as one of a number of factors to be considered in fashioning the ultimate sentence. *Id.* at 259-60. Of course, for Sixth Amendment purposes, this change makes all of the difference. *See id.*

3.

The Supreme Court in *Booker* did not address the applicability of the right to proof beyond a reasonable doubt in an advisory Guidelines system. This is easily explained: it had no reason to do so. The question presented in *Booker* was "[w]hether the Sixth Amendment is violated by the imposition

18 U.S.C. § 3742(e).

16

of an enhanced sentence under the United States Sentencing Guidelines based on the sentencing judge's determination of a fact . . . that was not found by the jury or admitted by the defendant." Petition for a Writ of Certiorari, *Booker*, 543 U.S. 220 (No. 04-104). The absence of discussion of the Fifth Amendment is not, as the dissent seems to believe, an implicit recognition that the right to proof beyond a reasonable doubt applies at sentencing. Rather, it simply reflects the limited scope of the grant of certiorari.

There can be no question, in light of the holding of *Booker* and the reasoning of *Apprendi*, that the right to proof beyond a reasonable doubt does not apply to facts relevant to enhancements under an advisory Guidelines regime. Like the right to a jury trial, the right to proof beyond a reasonable doubt attaches only when the facts at issue have the effect of increasing the maximum punishment to which the defendant is exposed. *Apprendi*, 530 U.S. at 489-94. The advisory Guidelines do not have this effect. They require the district judge to make findings of fact, but none of these alters the judge's final sentencing authority. *Booker*, 543 U.S. at 233, 259. They merely inform the judge's broad discretion. *Id.*

The sole legislative restrictions on the judge's sentencing authority post-*Booker* are those found in the United States Code. The Code defines crimes and prescribes maximum sentences. It identifies the facts necessary to establish an offense and any aggravating circumstances (e.g., significant drug quantity, use of a firearm, injury to a victim) that increase the maximum punishment. These facts must be established beyond a reasonable doubt. *Apprendi*, 530 U.S. at 490. But, once these

17

facts are found, triggering the statutory maximum, the judge may impose a sentence anywhere under that maximum without constitutional qualm. *Blakely*, 542 U.S. at 309*; Harris*, 536 U.S. at 556-68; *Apprendi*, 530 U.S. at 481-82; *Williams*, 337 U.S. at 242-47.

By excising the provisions of the United States Code requiring mandatory application of the United States Sentencing Guidelines, the Supreme Court in *Booker* altered the constitutional impact of the Guidelines. None of the facts relevant to enhancements or departures under the Guidelines can increase the maximum punishment to which the defendant is exposed. *E.g.*, *United States v. Tannis*, 942 F.2d 196, 198 (3d Cir. 1991); *see also* U.S. Sentencing Guidelines Manual § 5G1.1. The Due Process Clause thus affords no right to have these facts proved beyond a reasonable doubt. *Harris*, 536 U.S. at 558 ("Judicial factfinding in the course of selecting a sentence within the authorized range does not implicate the . . . reasonable-doubt component[] of the Fifth . . . Amendment[].").

This holding accords with other decisions addressing the issue. *See, e.g.*, *United States v. Cooper*, 437 F.3d 324, 330 (3d Cir. 2006); *United States v. Vaughn*, 430 F.3d 518, 525-26 (2d Cir. 2005), *cert. denied sub nom. Lindo v. United States*, 126 S. Ct. 1665 (2006); *United States v. Morris*, 429 F.3d 65, 72 (4th Cir. 2005); *United States v. Price*, 418 F.3d 771, 788 (7th Cir. 2005); *United States v. Magallanez*, 408 F.3d 672, 684-85 (10th Cir.), *cert. denied*, 126 S. Ct. 468 (2005); *United States v. Pirani*, 406 F.3d 543, 551 n.4 (8th Cir.) (en banc), *cert. denied*, 126 S. Ct. 266 (2005); *United States v. Yagar*, 404 F.3d 967, 972 (6th Cir. 2005); *United States v. Mares*, 402 F.3d 511, 519

18

& n.6 (5th Cir.), *cert. denied*, 126 S. Ct. 43 (2005); *United States v. Duncan*, 400 F.3d 1297, 1304-05 (11th Cir.), *cert. denied*, 126 S. Ct. 432 (2005).

4.

The dissent rejects the rationale of these decisions and proposes a novel standard under which the right to proof beyond a reasonable doubt would attach to facts relevant to the Guidelines when those facts constitute a "separate offense." It finds support for this position in *Jones v. United States*, 526 U.S. 227 (1999), and *Apprendi*. This reliance is misplaced.

The question presented in *Jones* was whether a provision of the federal carjacking statute raising the maximum penalty for crimes involving "serious bodily injury" should be interpreted as an element of the crime, to which the right to proof beyond a reasonable doubt applies, or as a mere sentencing enhancement. 526 U.S. at 229. The Supreme Court found, based on comparisons with other state and federal provisions defining aggravated robbery and assault as separate offenses, that "Congress probably intended serious bodily injury to be an element defining an aggravated form of the crime." *Id.* at 236. On this basis, it held that the fact of "serious bodily injury" must be submitted to a jury and proved beyond a reasonable doubt. *Id.* at 232-33, 251-52.

*Jones* was a statutory interpretation case. The comparison of the "serious bodily injury" provision to other, separate offenses was merely a means of gauging Congress's probable intent. *Id.* at 232-36. It was not a statement of

19

constitutional doctrine and did not purport to base the right to proof beyond a reasonable doubt on whether the facts at issue constitute an independent crime. *Id.*

The only mention of constitutional rights in *Jones* is in a subsidiary context, within a discussion of the interpretative canon of avoidance. *Id.* at 239-40. The Supreme Court noted that the "serious bodily injury" provision of the carjacking statute increased the maximum punishment to which the defendant was exposed and therefore likely implicated the defendant's rights to a jury trial and proof beyond a reasonable doubt, regardless of whether the provision was intended to operate as an "element" or an "enhancement." *Id.* at 239-52. The Court avoided the issue, however, by finding that Congress anticipated that the provision would stand as a separate "element," to which these rights undisputedly applied. *Id.* at 251-52.

There is no question of statutory interpretation here. The Guidelines were clearly intended by Congress to operate as sentencing enhancements, not as elements of a crime. The lack of clarity regarding congressional intent that compelled the Supreme Court in *Jones* to examine whether "serious bodily injury" could be analogized to an independent crime is simply not present here.

This is a constitutional case, governed by the rule of *Apprendi*: The rights to a jury trial and to proof beyond a reasonable doubt attach to those facts that increase the maximum punishment to which the defendant is exposed. 530 U.S. at 490. This standard is not based upon the legislature's

20

definition of a fact as an "element" or "enhancement," *id.* at 494, or upon a formalistic "multifactor parsing of statutes," *id.* at 501 (Thomas, J., concurring). Nor does it depend on whether the facts in question can be described as a "separate offense," a concept that appears nowhere in Supreme Court jurisprudence in this field except in the statutory discussion of *Jones*. 526 U.S. at 232-36. The sole question under *Apprendi* is whether the facts at issue increase the maximum punishment to which the defendant is exposed. 530 U.S. at 494 ("[T]he relevant inquiry is one not of form, but of effect – does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?").

Facts relevant to application of the Guidelines – whether or not they constitute a "separate offense" – do not have this effect. *E.g.*, *Tannis*, 942 F.2d at 198; *see also* U.S. Sentencing Guidelines Manual § 5G1.1. They inform the district court's discretion without limiting its authority. They therefore should not be treated as "elements" of a "crime" under the rationale of *Apprendi* and do not implicate the rights to a jury trial and proof beyond a reasonable doubt. 530 U.S. at 490, 494.

5.

The District Court in this case concluded that the burden of proof for facts relevant to sentencing was preponderance of the evidence. This standard is suggested by the Guidelines, *see* U.S. Sentencing Guidelines Manual § 6A1.3 cmt., is not precluded by the Fifth or Sixth Amendments, *see Booker*, 543 U.S. at 259, and has been approved by this Court, *see, e.g.*, *United States v. Mobley*, 956 F.2d 450, 455 (3d Cir. 1992).

21

We held in *United States v. Kikumura*, 918 F.2d 1084 (3d Cir. 1990), that certain sentencing enhancements under the Guidelines – those that significantly increase the recommended sentence and "can fairly be characterized as 'a tail which wags the dog of the substantive offense'" – must be proved by "clear and convincing evidence." *Id*. at 1100-01 (quoting *McMillan*, 477 U.S. at 88). The jurisprudential basis of this holding, grounded in dictum from *McMillan v. Pennsylvania*, 477 U.S. 79 (1986), has since been disavowed by the Supreme Court, *see Blakely*, 542 U.S. at 307-08 (citing *McMillan*, 477 U.S. at 88), and plainly conflicts with the principles underlying *Booker* and its predecessors, *see* 543 U.S. at 259-60; *see also Apprendi*, 530 U.S. at 481-82 (noting that factfinding in the course of selecting a sentence within the statutory range does not implicate the rights to a jury trial and proof beyond a reasonable doubt). We will therefore take the opportunity to overrule this aspect of *Kikumura*. *See Mennen Co. v. Atlantic Mut. Ins. Co.*, 147 F.3d 287, 294 n.9 (3d Cir. 1998) (noting that a panel of this Court may overrule the holding of a prior panel that is in direct conflict with intervening Supreme Court precedent).

We will affirm the District Court's decision to apply the preponderance standard to all facts relevant to the Guidelines, including the finding that Grier committed aggravated assault under Pennsylvania law.

## B.

That the District Court applied an acceptable burden of proof does not, of course, mean that its findings of fact should be upheld. We have traditionally reviewed factual findings

relevant to sentencing under a "clearly erroneous" standard. *See, e.g.*, *United States v. Lennon*, 372 F.3d 535, 538 (3d Cir. 2004). The parties apparently assume that the same standard should govern in this case.

However, the issue is not so clear cut. The Supreme Court in *Booker* excised subsection (e) of 18 U.S.C. § 3742, the provision of the United States Code that defined the appropriate standard of review for issues relevant to sentencing. 543 U.S. at 259. It held that appellate courts should thereafter review the ultimate sentence for "reasonableness." *Id.* at 260-63. Unfortunately, it did not specify whether the clearly erroneous standard should continue to apply to factual findings bearing on the advisory Guidelines range.

1.

Three options for a standard of review are available. First, courts of appeals could simply refuse to review factual findings relevant to the Guidelines on the ground that they do not govern the district court's final discretionary sentence. *See United States v. Mickelson*, 433 F.3d 1050, 1052-55 (8th Cir. 2006). Second, they could review factual determinations for "reasonableness," the standard suggested by *Booker* for review of the ultimate sentence. *See* 543 U.S. at 261. Third, courts could continue to review findings for "clear error." *See Lennon*, 372 F.3d at 538.

The first alternative, under which appellate courts would decline to review factual findings relevant to the Guidelines, is clearly untenable. District courts are required, under 18 U.S.C.

23

§ 3553(a), to consider the range prescribed by the Guidelines in imposing sentence on a defendant. *Id.* § 3553(a)(4); *see also Booker*, 543 U.S. at 261; *Cooper*, 437 F.3d at 329-32. The only manner by which this range can be determined is through a series of factual findings, adjusting the defendant's offense level and criminal history category. An error in these findings will result in an error in the recommended sentencing range and, thus, will necessarily impact the district court's assessment of the factors of 18 U.S.C. § 3553(a). Appellate review of the district court's factual conclusions is essential to ensure compliance with statutory mandates. *See United States v. Haack*, 403 F.3d 997, 1003 (8th Cir.), *cert. denied*, 126 S. Ct. 276 (2005).

The second alternative, under which courts of appeals would review findings of the district court for "reasonableness," is also unfeasible. The Supreme Court explained in *Booker* that review for "reasonableness" is meant to assess the ultimate sentence imposed: to determine whether the sentencing judge gave meaningful consideration to the factors of 18 U.S.C. § 3553(a). 543 U.S. at 260-61. Nothing in *Booker* suggests that the same standard is to be applied to evaluate the quantum of evidence offered in support of a particular finding of fact, even one that played a role in the court's final sentence. Indeed, application of the "reasonableness" standard, with its broad focus on policy goals, would be incompatible with review of factual findings. *See United States v. Mashek*, 406 F.3d 1012, 1015 (8th Cir. 2005).

Review for clear error offers the sole viable approach. The Supreme Court in *Booker* excised the "clearly erroneous"

24

standard from 18 U.S.C. § 3742(e) only because other aspects of that subsection included impermissible references to a mandatory Guidelines scheme. 543 U.S. at 260. Just as the Supreme Court interposed the "reasonableness" standard to fill in the gap for review of the ultimate sentence, the clearly erroneous standard fills in the gap for review of particular factual determinations.

Other courts of appeals have unanimously, if implicitly, adopted this approach. *United States v. Robinson*, 433 F.3d 31, 38 (1st Cir. 2005); *United States v. Castillo*, 430 F.3d 230, 238-39 (5th Cir. 2005); *United States v. Garcia*, 413 F.3d 201, 221-22 (2d Cir. 2005); *United States v. Davidson*, 409 F.3d 304, 310 (6th Cir. 2005); *United States v. Mashek*, 406 F.3d 1012, 1016 (8th Cir. 2005); *United States v. Bothun*, 424 F.3d 582, 585-86 (7th Cir. 2005); *United States v. Smith*, 424 F.3d 992, 1015 (9th Cir. 2005), *cert. denied*, 126 S. Ct. 1477 (2006); *United States v. Clark*, 415 F.3d 1234, 1246 (10th Cir. 2005); *United States v. Ebersole*, 411 F.3d 517, 536 (4th Cir. 2005), *cert. denied*, 126 S. Ct. 1142 (2006); *United States v. Crawford*, 407 F.3d 1174, 1177 (11th Cir. 2005). Indeed, we have previously suggested that the clearly erroneous standard would continue to apply post-*Booker*. *See United States v. Miller*, 417 F.3d 358, 362-63 (3d Cir. 2005) ("Nothing in *Booker* . . . necessarily calls into question the correctness of the District Court's factual findings or procedural decisions at the resentencing, or, for that matter, this court's [previous] approval thereof."); *United States v. Pojilenko*, 416 F.3d 243, 247 (3d Cir. 2005) (reviewing factual findings relevant to sentencing for clear error).

25

Despite the excision of subsection (e) of 18 U.S.C. § 3742, this Court will continue to review factual findings relevant to the Guidelines for clear error and to exercise plenary review over a district court's interpretation of the Guidelines. *See, e.g.*, *Robinson*, 433 F.3d at 35. "A finding is 'clearly erroneous' when[,] although there is evidence to support it, the reviewing [body] on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 622 (1993) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). A sentence imposed as a result of a clearly erroneous factual conclusion will generally be deemed "unreasonable" and, subject to the doctrines of plain and harmless error, will result in remand to the district court for resentencing. *E.g.*, *Robinson*, 433 F.3d at 35; *see also Booker*, 543 U.S. at 268.

2.

The challenged finding in this case, that Grier committed aggravated assault,[5] is not clearly erroneous. Aggravated assault

---

[5]The District Court did not make this finding on the record, but adopted the conclusion of the presentence report. *See United States v. Collado*, 975 F.2d 985, 990 (3d Cir. 1992) ("Where . . . the district court makes no independent findings of fact in relation to sentencing issues, but instead adopts the reasons set forth by the probation officer in the presentence investigation report, we view the report as containing the only findings of fact that support the court's sentencing decision.").

is defined under Pennsylvania law as an "attempt[] to cause serious bodily injury to another . . . under circumstances manifesting extreme indifference to the value of human life" or an "attempt[] to cause . . . bodily injury to another with a deadly weapon." 18 Pa. Cons. Stat. § 2702(a). An "attempt" may be found "when, with intent to commit a specific crime, [the individual] does any act which constitutes a substantial step toward the commission of that crime." *Id.* § 901(a); *see also Commonwealth v. Hall*, 830 A.2d 537, 541-42 (Pa. 2003).

The evidence presented during the sentencing hearing supports a finding that Grier attempted to cause bodily injury to Navarro with a deadly weapon. Navarro testified that he did not enter the fight with any weapons. The firearm was produced in some manner during the course of the altercation, and other individuals warned Navarro that Grier had a gun.[6] Soon

---

[6]Defense counsel argues that the statements by these bystanders were "classic hearsay." This may be true, but the Federal Rules of Evidence do not apply at sentencing, *see* Fed. R. Evid. 1101(d)(3); *see also Kikumura*, 918 F.2d at 1099-1100, and counsel does not argue that Navarro's recollection of the statements was so unreliable as to preclude admission under the liberal standards governing these proceedings, *see* U.S. Sentencing Guidelines Manual § 6A1.3(a) ("In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy."); *see also*

27

thereafter, the gun discharged. When the two combatants stood up, Grier was holding the weapon, aimed at Navarro. Grier then pointed the gun toward the sky, fired a single shot, and left the scene.

The precise circumstances of the fight are matters of reasonable speculation. It is arguable – and is argued by Grier on appeal – that the record shows that the gun accidentally dropped from his pocket during the altercation, and that his subsequent actions were intended merely to dissuade Navarro from continuing the fight. An equally plausible explanation of the evidence, however, is that Grier intentionally pulled the gun from his clothing and, while the two men were on the ground, fired a shot in an attempt to harm or kill Navarro. He thereafter rose and aimed the gun once again at Navarro but, for whatever

---

18 U.S.C. § 3661 ("No limitation shall be placed on the information . . . which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."); *United States v. Paulino*, 996 F.2d 1541, 1547 (3d Cir. 1993) ("Prior to the Sentencing Guidelines, the principle that sentencing judges could consider evidence at sentencing that would not be admissible at trial was firmly established[,] . . . subject to a due process standard of reliability."). *See also United States v. Martinez*, 413 F.3d 239, 243 (2d Cir. 2005) ("*Booker* . . . provide[s] no basis to question prior Supreme Court decisions that expressly approved the consideration of out-of-court statements at sentencing."), *cert. denied*, 126 S. Ct. 1086 (2006).

28

reason, decided to fire the weapon skyward and withdraw from the fight.

The District Court was entitled to credit the latter version. *See, e.g.*, *Coalition To Save Our Children v. Bd. of Educ.*, 90 F.3d 752, 759 (3d Cir. 1996). Despite defense counsel's protestations, and despite the absence of "direct" evidence that Grier voluntarily produced the gun, *see United States v. Bycer*, 593 F.2d 549, 551 (3d Cir. 1979) ("The fact that evidence is categorized as circumstantial does not make it less probative."), the testimony from Navarro could reasonably be interpreted as showing that Grier purposefully pulled the firearm during the fight and fired at Navarro with the intent to cause serious bodily harm. This supports the conclusion that Grier committed aggravated assault, warranting a four-level enhancement under the Guidelines. *See* U.S. Sentencing Guidelines Manual § 2K2.1(b)(5).

Grier's other claims, that he has established self-defense and that the offense should be classified as simple assault by mutual consent, fail for similar reasons. Pennsylvania law recognizes self-defense as a justification for a crime only if:

> (a) the actor was free from fault in provoking or continuing the difficulty which resulted in the use of deadly force; (b) the actor reasonably believed that he was in imminent danger of death or serious bodily injury and that there was a necessity to use such force in order to save himself or others; and (c) the actor did not violate any duty to retreat or to avoid the danger.

29

*Commonwealth v. Harris*, 703 A.2d 441, 449 (Pa. 1997); *see also* 18 Pa. Cons. Stat. § 505(b)(2) ("The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death[ or] serious bodily injury . . . ."). Grier admittedly played a role in starting the altercation by telling Navarro: "[L]et the problem be right here and now." And the record does not mandate a finding that Grier believed that he was "in imminent danger of death or serious bodily injury" during the fight, or that "there was a necessity to use such force in order to save himself."[7] *See Harris*, 703 A.2d at 449. There is no reason, let alone a compelling one, to conclude that the District Court erred in refusing to recognize Grier's claim of self-defense.

Nor did the District Court err in declining to characterize the crime as "simple assault by mutual consent." This offense is a lesser-graded version of simple assault, applicable when both parties share equal responsibility for commencing the underlying fight or scuffle. 18 Pa. Cons. Stat. § 2701(b)(1). There is, however, no similar exception for *aggravated* assault. *See id.* § 2702. The District Court's finding that Grier had committed aggravated assault rendered the mutual consent provision inoperative.

---

[7]At the time of the altercation, Grier was suffering from migraines and other adverse effects of recent surgery to remove a brain tumor; however, there is no evidence suggesting that these conditions rendered Grier at risk of serious injury or death from Navarro's attack.

30

C.

The final question in this case, and the ultimate inquiry in the review of any sentence post-*Booker*, is whether the sentence was "reasonable." The touchstone of "reasonableness" is whether the record as a whole reflects rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a).[8]

---

[8]These factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed–

>(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

>(B) to afford adequate deterrence to criminal conduct;

>(C) to protect the public from further crimes of the defendant; and

>(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . issued

*Cooper*, 437 F.3d at 329-32; *see also Booker*, 543 U.S. at 261. It must be clear that the district court understood and reasonably discharged its obligation to take all of the relevant factors into account in imposing a final sentence. *E.g.*, *Cooper*, 437 F.3d at 329-32.

The record in this case is simply too sparse to allow us to conclude that the District Court honored its statutory duty.[9] The only explanation of the sentence provided by the District Court

by the Sentencing Commission[;] . . .
(5) any pertinent policy statement . . . issued by the Sentencing Commission[;] . . .
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

[9]An objection to the reasonableness of the final sentence will be preserved if, during sentencing proceedings, the defendant properly raised a meritorious factual or legal issue relating to one or more of the factors enumerated in 18 U.S.C. § 3553(a). *See Cooper*, 437 F.3d at 329 (citing *United States v. Cunnigham*, 429 F.3d 673, 679 (7th Cir. 2005)). The government does not argue in this case that Grier failed to preserve his challenge to the sentence imposed by the District Court.

was: "The Court believes that 100 months is reasonable in view of the considerations of section 3553(a)." This statement, as a justification of the sentence, leaves much to be desired. It is devoid of substantive content and offers little assistance to an appellate tribunal reviewing the sentence.

More elaboration is necessary. The Sentencing Reform Act mandates that the District Court "consider" the factors of 18 U.S.C. § 3553(a). *Id.* The record must disclose meaningful consideration of the relevant statutory factors and the exercise of independent judgment, based on a weighing of those factors, in arriving at a final sentence. *Cooper*, 437 F.3d at 329-32.

The rationale by which a district court reaches a final sentence is important. It offers the defendant, the government, the victim, and the public a window into the decision-making process and an explanation of the purposes the sentence is intended to serve. It promotes respect for the adjudicative process, by demonstrating the serious reflection and deliberation that underlies each criminal sentence, and allows for effective appellate oversight.

We will remand this case to allow the District Court to resentence the defendant. We do not suggest that the original sentence reflects anything less than the sound judgment of the district judge, or that the final sentence should necessarily differ from the one previously imposed. The nature of the final sentence is, as always, a matter within the discretion of the District Court. We do ask, however, that the District Court explain its decision on the record, specifically by reference to the factors of 18 U.S.C. § 3553(a).

33

## III.

The opinion in *Booker* did not alter the burden of proof or the standard of review for findings of fact relevant to sentencing. But it did, by rendering the United States Sentencing Guidelines advisory rather than mandatory, place a premium on thorough explication of sentencing decisions. A reasoned and rational justification for a sentence is necessary to assure the parties of the fairness of the proceedings, to instill public confidence in the judicial process, and to allow for effective appellate review.

The explanation offered by the District Court in this case fell short of this goal. It simply recites the necessity of compliance with 18 U.S.C. § 3553(a) without expressly considering the relevant statutory factors. While the original sentence was most likely the product of comprehensive and thoughtful deliberation, the record does not reflect that fact. We will remand this case to allow the District Court to reconsider the factors of 18 U.S.C. § 3553(a) on the record and then to resentence the defendant.

The judgment of sentence will be vacated and this case will be remanded to the District Court for further proceedings in accordance with this opinion.

United States v. Sean Michael Grier, No. 05-1698

SLOVITER, Circuit Judge, dissenting.

I respectfully dissent from the opinion of the majority. In treating the finding of an aggravated assault as a sentencing factor that may permissibly be used to enhance Grier's sentence, the majority has abrogated the Fifth Amendment of the United States Constitution. The Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), did not discuss the Fifth Amendment nor did it suggest that it had no role in sentencing: certainly the majority, as an inferior court, has no authority to abnegate one of the most important, if not the most important, of the rights that the Constitution assures criminal defendants.

The majority accomplishes this draconian move by holding that a defendant's sentence can be enhanced by a District Court's finding by a preponderance of the evidence that the defendant committed a criminal offense, a finding which, according to the majority, need not be submitted to a jury. The majority states: "We will affirm the District Court's decision to apply the preponderance standard to all facts

35

relevant to the Guidelines, including the finding that Grier committed aggravated assault under Pennsylvania law." Maj. Typescript Op. at 22. This holding turns constitutional criminal procedure on its head.

I.

Central to our consideration of Grier's appeal from the sentence imposed by the District Court following his guilty plea to possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1), is the effect of the recent trilogy of opinions of the United States Supreme Court on sentencing, United States v. Apprendi, 530 U.S. 466 (2000), Blakely v. Washington, 542 U.S. 296 (2004), and United States v. Booker, 543 U.S. 220 (2005),[10] but primarily Apprendi.

II.

---

[10] U.S.S.G. § 2K2.1(b)(5) provides in relevant part that "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense . . . increase by 4 levels."

36

The charge to which Grier pled guilty has a statutory maximum imprisonment term of 120 months, 18 U.S.C. § 924(a)(2), and no mandatory minimum. In the Presentence Report (PSR), the Probation Officer calculated that the appropriate Guidelines range for Grier's sentence (with a total offense level of 27 and a category V criminal history) was 120-150 months. This calculation was based on, inter alia, a four-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(5) on the ground that Grier "used or possessed the firearm in connection with another felony offense (aggravated assault)." PSR, para. 14. The PSR stated that "[b]ecause [Grier] pled guilty to a charge which has a maximum statutory penalty of 10 years . . . the guideline term is 120 months pursuant to U.S.S.G. § 5G1.1(a)." PSR, para. 50. The PSR also noted that without the four-level enhancement under § 2K2.1(b)(5) the appropriate sentencing range would be 84 to 105 months in prison.

At the sentencing hearing held February 25, 2005, which was after Booker was decided, the District Court, treating the Sentencing Guidelines as advisory, adopted the PSR which referred to the "other felony offense" as "aggravated assault." In determining that Grier had committed that "other felony offense," the District Court expressly used the preponderance of the evidence standard, made a downward departure under U.S.S.G. § 5K2.10 because the victim was partially responsible for the assault

37

that was the basis for the enhancement, and sentenced Grier to 100 months in prison, with three years of supervised release. There can be no doubt, and the majority does not question, that the PSR conclusion, adopted by the District Court, played a role in Grier's ultimate sentence.[11]

On appeal, Grier contends that the District Court committed two errors when it enhanced his sentence under § 2K2.1(b)(5). First, the District Court based the enhancement on facts found by a preponderance of the evidence, rather than beyond a reasonable doubt, in violation of Grier's Fifth Amendment right to due process of law. Second, Grier argues that the record does not support a finding that he committed an aggravated assault, regardless of what standard of proof is used.[12]

---

[11] Although the sentence Grier actually received happened to fall within the statutory maximum and the Guideline range of 84 to 105 months that would have been applicable had there been no four-level enhancement, the majority's constitutional analysis does not depend on that fact, nor could it following the decision in Blakely. See discussion at page 14 infra.

[12] Grier also contends that the District Court erred by failing to articulate its consideration of the factors set forth in 18

38

III.

The question whether the Fifth Amendment right to due process requires that the fact that formed the basis for Grier's four-level sentencing enhancement, i.e., that he committed a separate felony while using the firearm, be found beyond a reasonable doubt, is a question of law and is therefore subject to plenary review.[13]  See United States v. Williams, 235 F.3d 858, 861 (3d Cir. 2000).  The District Court's findings of facts are reviewed for clear error.  United States v. Gibbs, 190 F.3d 188, 203 (3d Cir. 1999).  I consider first the changes in sentencing that have resulted from the Supreme Court's recent trilogy in Apprendi, Blakely, and

U.S.C. § 3553(a) in determining Grier's sentence, making the sentence unreasonable.  Because I distinguish between sentencing factors, the subject of § 3553, which are not at issue here, and offense defining factors which are the subject of this dissent, I need not discuss Grier's contention.

[13] Grier also alleges that we may review his sentence because it is "unreasonable."  A sentence imposed in violation of Grier's Fifth Amendment rights would be imposed in violation of the law, and therefore, unreasonable.  United States v. Cooper, 437 F.3d 324, 327–28 (3d Cir. 2006); 18 U.S.C. § 3742(a)(1).

39

Booker and then analyze Grier's due process rights in the context of this new sentencing regime.

A.  The Impact of *United States v. Booker*

The holdings of the two Booker opinions are by now sufficiently reviewed that I need not dwell on them.  The Booker opinion authored by Justice Stevens for a majority of five reaffirmed the holding in Apprendi that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt" and extended that rule to the Sentencing Guidelines.  Booker, 543 U.S. at 244.  In the opinion authored by Justice Breyer, the Court severed and excised both the provision of the Act that made the Guidelines mandatory, 18 U.S.C. § 3553(b)(1), and the provision that set forth standards of review on appeal, 18 U.S.C. § 3742(e), Booker, 543 U.S. at 259-60, thereby transforming the Guidelines to advisory guidelines for the information and use of the district courts in whom discretion was now reinstated.  The Court noted that district courts do not have complete discretion, as they must "consult those Guidelines and take them into account when sentencing."  543 U.S. at 264.

40

In its interpretation of <u>Booker</u>, the majority states, "Once an individual has been convicted by a jury beyond a reasonable doubt of the predicate facts of illegal conduct, triggering a statutory maximum penalty, a court may impose any sentence on the individual up to that maximum. Judicial factfinding in the course of selecting a sentence within the permissible range does not implicate or offend the Fifth and Sixth Amendment rights to a jury trial and proof beyond a reasonable doubt." Maj. Typescript Op. at 11. It later states, "The excision of these provisions [making the Guidelines mandatory and providing de novo review of departures] rendered the Guidelines advisory, freeing the trial judge to impose any sentence permitted under the United States Code regardless of the sentence recommended by the Guidelines." Maj. Typescript Op. at 14-16.

Both are overstatements. A finding of guilt of an additional offense for purposes of increasing a defendant's sentence definitely "implicates" the Fifth Amendment.

As the majority recognizes, the <u>Booker</u> Court's holding is limited to an analysis of the defendant's Sixth Amendment right to a jury trial. <u>Booker</u> offered no discussion of the Fifth Amendment, and to the extent that making the Guidelines advisory obviated the constitutional concerns raised in that case, it must be noted that there is a clear distinction to be drawn between Fifth and Sixth Amendment guarantees; the

41

fact that rendering the Guidelines advisory remedied Sixth Amendment violations has little bearing on Fifth Amendment considerations. The issue before this court is whether, under the now-advisory Guidelines, the enhancement based on a judicial finding of fact (the commission of a separate felony) by the preponderance of evidence violated Grier's Fifth Amendment rights or would violate the Fifth Amendment rights of any criminal defendant similarly situated.

B.  Fifth Amendment Due Process Rights at Sentencing

A Fifth Amendment challenge, like the Fourteenth Amendment challenge at issue in Apprendi, involves a constitutional protection of "surpassing importance: the proscription of any deprivation of liberty without 'due process of law.'" Apprendi, 530 U.S. at 476 (citation omitted). Although the Constitution does not explicitly require that a finding of guilt be made under a beyond-a-reasonable-doubt standard, the Supreme Court has explicitly so held.  "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970).

The entitlement to proof beyond a reasonable doubt is "as equally well-founded" as the right to a jury determination and is based in the common law. See id. at 361 (noting that the "demand for a higher degree of persuasion in criminal cases was recurrently expressed from ancient times . . . and is now accepted in the common law jurisdictions as the measure of persuasion by which the prosecution must convince the trier of all essential elements of guilt") (quotation marks and citation omitted).

The majority's statement "[t]hat a defendant does not enjoy the right to a jury trial ineluctably means that he or she does not enjoy the right to proof beyond a reasonable doubt," Maj. Typescript Op. at 9, is simply wrong. That standard is as equally applicable to a judge who sits as the trier of fact as to a jury. Indeed, in In re Winship, the Court held that a provision of the New York Family Court Act that authorized a judge to determine by a preponderance of the evidence that a juvenile was delinquent - that is, guilty of a crime - violated the Fifth Amendment. Writing for the majority of the Supreme Court which reversed the decision of the New York Court of Appeals that had sustained the constitutionality of the Act, Justice Brennan noted that "the requirement of proof beyond a reasonable doubt has this vital role in our criminal procedure for cogent reasons. The accused during a criminal prosecution has at stake interests of immense importance, both because of the possibility that he may lose his liberty upon conviction and because of the certainty that he would be stigmatized by the conviction." 397 U.S. at 363.

43

Justice Harlan, concurring, expounded on the difference between the preponderance of the evidence standard of proof and the beyond-a-reasonable-doubt standard. He explained that "even though the labels used for alternative standards of proof are vague and not a very sure guide to decisionmaking, the choice of the standard for a particular variety of adjudication does . . . reflect a very fundamental assessment of the comparative social costs of erroneous factual determinations." Id. at 369-70. He explained that "a standard of proof represents an attempt to instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication." Id. at 370. He continued that although the two phrases are quantitatively imprecise, "they do communicate to the finder of fact different notions concerning the degree of confidence he is expected to have in the correctness of his factual conclusions." Id.

He concluded that whereas a preponderance of the evidence standard seems particularly appropriate in civil cases between two parties for money damages where the factfinder need determine that the existence of a fact is more probable than its nonexistence, the criminal case stands on a different footing. Recognizing that there is always a margin of error in factfinding, he quoted from an earlier opinion in which Justice Brennan stated that "'[w]here one party has at stake an interest of transcending value - as a criminal defendant his liberty - this margin of error is reduced as to him by the

44

process of placing on the other party the burden . . . of persuading the factfinder at the conclusion of the trial of his guilt beyond a reasonable doubt.'"  Id. at 372 (quoting Speiser v. Randall, 357 U.S. 513, 525-26 (1958)).

The Due Process Clause of the Fifth Amendment with its requirement of proof beyond a reasonable doubt is equally applicable to issues in sentencing when the underlying sentencing determination is dependent upon commission of an offense and requires a finding of guilt or innocence.  In Jones v. United States, 526 U.S. 227 (1999), the Court vacated a sentence imposed upon a criminal defendant who was found guilty of violating the federal carjacking statute, 18 U.S.C. § 2119.  Section 2119 makes carjacking a crime, and then in three subsections sets forth what the Court held were three distinct offenses with three maximum penalties.  See § 2119; Jones, 526 U.S. at 229.  Subsection 1 provides that the penalty for carjacking is a fine or imprisonment of not more than 15 years or both; Subsection 2 provides that for carjacking if serious bodily injury results, the penalty is a fine or imprisonment of not more than 25 years or both; and Subsection 3 provides that if death results, the penalty is a fine or imprisonment for any number of years up to life or both.  The district court in Jones instructed the jury on carjacking, but did not instruct on serious bodily injury, nor was that pled in the indictment.  Nonetheless, the district court sentenced Jones to 25 years on the carjacking, finding by a preponderance of the evidence that there was serious bodily injury.

45

When the case reached the Supreme Court, it rejected the Government's argument that the fact of serious bodily harm was merely a sentencing factor and instead construed § 2119 "as establishing three separate offenses by the specification of distinct elements, each of which must be charged by indictment, proven beyond a reasonable doubt, and submitted to a jury for its verdict." Id. at 252. The Court found that permitting the judge to make findings regarding serious bodily harm to the victim by a preponderance of the evidence thereby increasing the sentencing range for that crime would present a serious due process issue. See id. at 243.

The majority states that Jones was a statutory interpretation case and suggests that its holding has no relevance to the issue before us. I suggest that the majority reread the text of section III of the Supreme Court's opinion in Jones. In support of its decision to read the carjacking statute as treating the fact of bodily harm as an element of the crime rather than a mere enhancement, the Court discussed at some length the "'grave and doubtful constitutional questions'" that would arise were it to interpret the statute otherwise. Id. at 239 (quoting U.S. ex rel. Attorney Gen. v. Del. & Hudson Co., 213 U.S. 366, 408 (1909)). After citing In re Winship, referred to above, the Court reviewed the holdings in Mullaney v. Wilbur, 421 U.S. 684 (1975), Patterson v. New York, 432 U.S. 197 (1970), and McMillan v. Pennsylvania, 479 U.S. 79 (1986), focusing on the constitutional issues they presented. Jones, 526 U.S. at 240-

46

42.  In a footnote, the Jones Court restated the principles that underlay its view that the carjacking statute, as construed by the Government, might violate the Constitution.  It stated, inter alia: "The constitutional safeguards that figure in our analysis concern not the identity of the elements defining criminal liability but only the required procedures for finding the facts that determine the maximum permissible punishment; these are the safeguards going to the formality of notice, the identity of the factfinder, and the burden of proof." Id. at 243 n.6 (emphasis added).

Further belying the majority's disregard of the significance of Jones are the following statements in the Jones opinion:

The question might well be less serious than the constitutional doubt rule requires if the history bearing on the Framers' understanding of the Sixth Amendment principle demonstrated an accepted tolerance for exclusively judicial factfinding to peg penalty limits.  But such is not the history . . . [S]everal studies demonstrate that on a general level the tension between jury powers and powers exclusively judicial would likely have been very much to the fore in the Framers' conception of the jury right.

47

<u>Id.</u> at 244.[14]

   <u>Jones</u>, with its affirmation of the principle that due
process protections are required for offense-defining
elements, was followed by <u>Apprendi</u>, in which the Court
distinguished between sentencing factors which the district
court may find by a preponderance of the evidence and
consider when exercising its discretion to sentence within a
given range, and those sentencing determinations for which
due process demands a greater degree of procedural
protection.  As to sentencing factors, the Court stated:

      We should be clear that nothing in this history
      suggests that it is impermissible for judges to exercise
      discretion - taking into consideration various factors
      relating both to the offense and offender - in imposing
      a judgment *within the range* prescribed by statute.  We
      have often noted that judges in this country have long

---

[14] The "constitutional doubt rule" referred to in the <u>Jones</u>
paragraph quoted above instructs: "the rule, repeatedly affirmed,
that 'where a statute is susceptible of two constructions, by one
of which grave and doubtful constitutional questions arise and
by the other of which such questions are avoided, our duty is to
adopt the latter.'" <u>Jones</u>, 526 U.S. at 239 (quoting <u>Del. &
Hudson</u>, 213 U.S. at 408).

exercised discretion of this nature in imposing sentence *within statutory limits* in the individual case.

Apprendi, 530 U.S. at 481. The Court contrasted the determinations of sentencing factors from the determinations of what are usually characterized as elements of the offense, to which greater due process protections apply. As the Court stated:

If a defendant faces punishment beyond that provided by statute when an offense is committed under certain circumstances but not others, it is obvious that both the loss of liberty and the stigma attaching to the offense are heightened; it necessarily follows that the defendant should not - at the moment the State is put to proof of those circumstances - be deprived of protections that have, until that point, unquestionably attached.

Id. at 484.

The Court stated that "[s]ince *Winship*, we have made clear beyond peradventure that *Winship*'s due process and

49

associated jury protections extend, to some degree, 'to determinations that [go] not to a defendant's guilt or innocence, but simply to the length of his sentence.'" Id. (quoting United States v. Almendarez-Torres, 523 U.S. 224, 251 (1998) (Scalia, J., dissenting)). The Court then explained which facts are entitled to the due process protections. Justice Stevens, writing for the Apprendi majority, quoted from his concurring opinion in Jones, where he wrote, "'[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt.'" (quoting Jones, 526 U.S. at 252-53 (Stevens, J., concurring)).

The holding of Jones that due process protections are required for offense defining elements as distinguished from sentencing factors was the precedent on which the Supreme Court's decision in Apprendi was based. Apprendi pled guilty in state court to two counts of possession of a firearm for an unlawful purpose, and one count of unlawful possession of an antipersonnel bomb. Apprendi, 530 U.S. at 469-70. The State reserved the right to seek a higher enhanced sentence on the ground that one count of firearms possession was committed with a biased purpose in violation of N.J. Stat. § 2C:44-3, which was punishable by imprisonment for between ten and twenty years. Id. at 470. After a hearing, the state trial judge found by a preponderance of the evidence that Apprendi's crime was motivated by racial bias in violation of

50

the state statute and enhanced Apprendi's sentence accordingly.  Id. at 471.  The finding doubled the maximum range within which Apprendi could be sentenced.

Although there was a "full evidentiary hearing" in the New Jersey court on whether Apprendi acted with a biased purpose, that issue was not presented to the jury.  The United States Supreme Court thus stated, "The question whether Apprendi had a constitutional right to have a jury find such bias on the basis of proof beyond a reasonable doubt is starkly presented."  Id. at 475-76.  The Court then quoted from the opinion in United States v. Gaudin, 515 U.S. 506 (1995), that due process requires, inter alia, that a criminal defendant be afforded  "'a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.'"  Apprendi, 530 U.S. at 477 (quoting Gaudin, 515 U.S. at 510).  The Court then noted that historically "[j]ust as the circumstance of the crime and the intent of the defendant at the time of commission were often essential elements to be alleged in the indictment, so too were the circumstances mandating a particular punishment."  Apprendi, 530 U.S. at 480.  It quoted from a well-known historical treatise:

> Where a statute annexes a higher degree of punishment
> to a common-law felony, if committed under particular
> circumstances, an indictment for the offence, in order

51

to bring the defendant within that higher degree of
punishment, must expressly charge it to have been
committed under those circumstances, and must state
the circumstances with certainty and precision.

Id. (quoting J. Archibold, Pleading & Evidence in Criminal
Cases, 51 (15 ed. 1862)).

After that discussion, the Apprendi Court held that the
New Jersey statutory scheme, allowing a judge to make
findings by a preponderance of the evidence that the
defendant's "purpose" for unlawfully possessing the weapon
was to intimidate his victim on the basis of race, was
unconstitutional. Apprendi, 530 U.S. at 491-92. ("In light of
the constitutional rule . . . and all of the cases supporting it,
this practice cannot stand."). The Hate Crime Enhancement
statute requires a particular criminal *mens rea*, and the Court
therefore rejected New Jersey's argument that the required
"motive" finding was simply a "traditional" sentencing factor.
Id. at 493-94. It continued, "[t]he degree of criminal
culpability the legislature chooses to associate with particular,
factually distinct conduct has significant implications both for
a defendant's very liberty, and for the heightened stigma
associated with an offense the legislature has selected as
worthy of greater punishment." Id. at 495. Distinguishing
Almendarez-Torres (which held evidence of prior convictions
admissible without further proof), the Court stated:

52

there is a vast difference between accepting the validity of a prior judgment of conviction entered <u>in a proceeding in which the defendant had the right to a jury trial and the right to require the prosecutor to prove guilt beyond a reasonable doubt, and allowing the judge to find the required fact under a lesser standard of proof</u>.

<u>Id.</u> at 496 (emphasis added).

That statement alone is dispositive of this appeal. Grier's sentence was enhanced based on the District Judge's finding that he committed an aggravated assault despite the fact that no jury found that he had done so and no factfinder, not even the judge, so found beyond a reasonable doubt. The majority's only response to the reasoning in <u>Apprendi</u> set forth above, is "[l]ike the right to a jury trial, the right to proof beyond a reasonable doubt attaches only when the facts at issue have the effect of increasing the maximum punishment to which the defendant is exposed. *Apprendi*, 530 U.S. at 489-94. The advisory Guidelines do not have this effect." Maj. Typescript Op. at 17. This, I respectfully state, is a <u>non sequitur</u>.

C.  Fifth Amendment Due Process rights Post-*Apprendi*

53

Grier contends that his Fifth Amendment due process rights, as delineated in <u>Winship</u>, <u>Jones</u>, and <u>Apprendi</u>, were violated when the judge found that he had committed

a separate felony offense which exposed him to a sentence of 120 months. At argument, the Government contended that no <u>Apprendi</u> analysis is required in this case because <u>Booker</u> marked a return to judicial discretion in sentencing, and the ultimate sentence that Grier received was within the sentencing range for the crime to which he pled guilty; as noted previously, the range for his crime was 84-105 months and he received a sentence of 100 months. The Government also contended that because <u>Booker</u> did not explicitly require that findings of fact relevant to sentencing be made under the beyond-a-reasonable-doubt standard, findings of fact that enhance a sentence need only be made by a preponderance of the evidence. Lastly, the Government argued that the Supreme Court's decision in <u>United States v. Watts</u>, 519 U.S. 148 (1997), and this court's own decision in <u>United States v. Miller</u>, 417 F.3d 358 (3d Cir. 2005), held that <u>Booker</u> permits factual finding relevant to sentencing to be made by a preponderance of the evidence.

This court's decision in <u>United States v. Williams</u>, 235 F.3d 858 (3d Cir. 2000), arguably lends some support to the Government's contention that Grier's case does not warrant an <u>Apprendi</u> analysis. In that case, this court held that <u>Apprendi</u> did not apply to a Guidelines sentence that was below the statutory maximum even though we recognized that

54

the sentencing judge's enhancement was based on facts not proved beyond a reasonable doubt. "[W]e hold that Apprendi does not apply to the increase in Williams' sentence under the Sentencing Guidelines." Id. at 862; see also United States v. Cepero, 224 F.3d 256, 267 n.5 (3d Cir. 2000) (en banc) ("Because application of the Sentencing Guidelines in this case does not implicate a fact that would increase the penalty of a crime beyond the statutory maximum, the teachings of [Apprendi] are not relevant here.").

The Williams court did not have the benefit of the Supreme Court's decisions in Blakely and Booker and therefore its interpretation of Apprendi was too narrow. Blakely applied the Court's earlier holding in Apprendi to a state's indeterminate sentencing regime and held that any fact that increased the sentence must also be submitted to a jury, even though this sentence would fall within the absolute maximum allowed by the statute. 542 U.S. at 303-04. See note 2 supra. Because Blakely held that "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant,*" 542 U.S. at 303 (emphasis in original), any enhancement based on additional facts, even if the ultimate sentence is within the statutory range, raises an Apprendi issue.

55

Grier's sentence was based in part on the PSR which concluded that Grier had committed an aggravated assault.[15] Grier's commission of an aggravated assault, vel non, is not simply a sentencing factor, i.e. a fact enhancing the crime of conviction, such as the vulnerability of the victim, the status of the victim, the defendant's role in the offense. See U.S.S.G. § 3A.1. et seq. Rather, an aggravated assault constitutes a separate crime under relevant state law. See, e.g., 18 Pa. Cons. Stat. § 2702. The District Court's acceptance of the PSR's finding that Grier committed aggravated assault essentially penalized Grier for committing a felony without a jury or judge determination that he committed that crime beyond a reasonable doubt. As a result of this finding, his sentencing range was increased from 84-105 months to the statutory maximum of 120 months.

In Apprendi the Court stated:

---

[15] The PSR stated that Grier committed an aggravated assault and Grier's brief focuses on that finding. At the sentencing hearing the Government argued that Grier committed simple assault by physical menace, which constitutes a felony under Pennsylvania law and would support application of the four-level enhancement under U.S.S.G. § 2K2.1(b)(5). See 18 Pa. Cons. Stat. § 2701(a)(3). The District Court did not make a finding as to whether Grier had committed a simple assault by physical menace, but instead adopted the PSR. Accordingly, I do not consider the Government's argument on this point.

56

The differential in sentence between what Apprendi would have received without the finding of biased purpose and what he could receive with it is not, it is true, as extreme as the difference between a small fine and mandatory life imprisonment.  Mullaney, 421 U.S., at 700.  But it can hardly be said that the potential doubling of one's sentence – from 10 years to 20 – has no more than a nominal effect.  Both in terms of absolute years behind bars, and because of the more severe stigma attached, the differential here is unquestionably of constitutional significance.  When a judge's finding based on a mere preponderance of the evidence authorizes an increase in the maximum punishment, it is appropriately characterized as "a tail which wags the dog of the substantive offense."  McMillan, 477 U.S., at 88.

530 U.S. at 495.

Apprendi's sentence was vacated because the sentencing judge in that case found facts that constitute a separate crime by a preponderance of evidence and that finding increased the statutory maximum to which the defendant was exposed.  Grier's situation is thus comparable to Apprendi's and the holding of the majority is directly contrary to the reasoning in Apprendi.

57

My view is consistent with that expressed in Justice Thomas' partial dissent in Booker, where he noted that "[t]he commentary to § 6A1.3 states that '[t]he Commission believes that use of a preponderance of the evidence standard is appropriate to meet due process requirements and policy concerns in resolving disputes regarding application of the guidelines to the facts of a case.' The Court's holding today [in *Booker*] corrects this mistaken belief. The Fifth Amendment requires proof beyond a reasonable doubt, not by a preponderance of the evidence, of any fact that increases the sentence beyond what could have been lawfully imposed on the basis of facts found by the jury or admitted by the defendant." 543 U.S. at 319 n.6 (emphasis added); cf. United States v. Pimental, 367 F. Supp. 2d 143, 153 (D. Mass. 2005) ("Certain facts . . . assume inordinate importance in the sentencing outcome. So long as they do, they should be tested by our highest standard of proof.").

The Government contends that requiring proof beyond a reasonable doubt for sentencing enhancements based on facts constituting a separate crime is contrary to the Supreme Court's precedent in United States v. Watts, 519 U.S. 148 (1997). Watts held that a sentencing judge could consider conduct underlying an acquitted charge. In Booker, Justice Stevens characterized Watts as a case that "presented a very narrow question regarding the interactions of the Guidelines with the Double Jeopardy Clause, and did not even have the benefit of full briefing or oral argument." Booker, 543 U.S. at 240 n.4. He also noted that there was no contention in Watts

58

"that the sentencing enhancement had exceeded the sentence authorized by the jury verdict[.]" Id. at 240. Because the key issues in Watts are different both from those addressed by the Court in Booker and from those Grier raises, I believe that Watts is inapposite.

According to the Government, requiring proof beyond a reasonable doubt of facts underlying a sentencing enhancement would contradict this court's decision in Miller, 417 F.3d 358. In Miller, we considered judicial factfinding after the Supreme Court's pronouncements in Booker. We observed that "[n]othing in Booker . . . necessarily calls into question the correctness of the District Court's factual findings or procedural decisions at resentencing . . . . We merely note that the District Court is free to engage in precisely the same exercise in judicial fact finding as it did in February 2003, so long as such fact finding is consistent with Booker." Id. at 362-63.

There are clear differences between the issue before us today and the issues faced by the Miller court. First, the phrase from Miller quoted above is dictum and therefore does not bind our decision here. Second, no Fifth Amendment Due Process claims had been asserted by the defendants in Miller and we did not have the opportunity to consider the arguments that Grier raises. Therefore, Miller is inapposite.

59

The cases cited by the majority as in accord with its decision do not in fact so hold.  Many of them are cases where the issue was merely the amount of drugs, clearly a sentencing factor after the defendant was found guilty or pled to the underlying drug offense.  See, e.g., United States v. Vaughn, 430 F.3d 518 (2d Cir. 2005), cert. denied sub nom. Lindo v. United States, 126 S. Ct. 1665 (2006); United States v. Morris, 429 F.3d 65 (4th Cir. 2005); United States v. Magallanez, 408 F.3d 672 (10th Cir.), cert. denied, 126 S. Ct. 468 (2005); United States v. Duncan, 400 F.3d 1297 (11th Cir.), cert. denied, 126 S. Ct. 432.  There was no mention of the Fifth Amendment in United States v. Pirani, 406 F.3d 543 (8th Cir.) (en banc), cert. denied, 126 S. Ct. 266 (2005).  The decision in United States v. Mares, 402 F.3d 511 (5th Cir.), cert. denied, 126 S. Ct. 43 (2005), was based on the Sixth Amendment, not the Fifth Amendment.  None of the cases cited by the majority focus on the issue that is the basis for this dissent.  In any event, if they did and were to hold otherwise, I would believe that they were incorrectly decided.

Accordingly, I respectfully dissent from the holding that the District Court may enhance Grier's sentence based on its determination by a preponderance of the evidence, that Grier committed an aggravated assault that was not admitted nor submitted to a jury for determination by proof beyond a reasonable doubt.

60

D.  The District Court's Findings of Fact

        Although I agree with the majority's decision to
remand this case to the District Court for resentencing, I
respectfully dissent from the majority's determination to
allow the District Court to reconsider its determination that
Grier committed an aggravated assault, as I believe that
finding was clearly erroneous.

        Even if the majority were convincing that the
appropriate standard of proof is preponderance of the
evidence the District Court erred in finding that Grier
committed an aggravated assault.  United States v. Gibbs, 190
F.3d 188, 197 (3d Cir. 1999).  At most, the facts on the record
support a charge of simple assault by mutual consent, which,
under Pennsylvania law is only punishable by up to one year
in prison.  See 18 Pa. Cons. Stat. §§ 2701(b)(1), 1104(3).
Simple assault by mutual consent cannot support application
of a four-level enhancement under U.S.S.G. § 2K2.1(b)(5)
because it does not meet the requirements for a "felony
offense," which is defined as "any offense (federal, state, or
local) punishable by imprisonment for a term exceeding one
year, whether or not a criminal charge was brought, or
conviction obtained."  U.S.S.G. § 2K2.1 cmt. 4.

The evidence at the sentencing hearing consisted only of the testimony from Juan Navarro, the brother of Grier's girlfriend, with whom he engaged in the altercation that constituted the basis for the finding of aggravated assault. Navarro testified that he "swung first," i.e., that he was the first aggressor in the altercation. App. at 51; Tr. at 10, l. 1. He testified that he and Grier then "started rolling around on the ground." App. at 56. Navarro testified that the gun initially went off while they were struggling on the ground:

> We started fighting. And the people surrounding us was [sic] saying that he had a gun and all that, and they tried to get the gun from him and all. And then a shot fired. Then we just separated. And then after that, he just pointed the gun at me, and then it went–I started–I kept going after him. And then people was just holding me back, and then he went from there where he was gonna go, and then stopped. The fight just stopped right there.

Id.

Navarro further testified on cross-examination that he did not know how the gun had gotten out of Grier's pocket: "I don't know if the gun fell out or whatever. People was telling

62

me that he was taking the gun out. And from there, that's when everybody tried to get the gun away from me." App. at 57; Tr. at 16, l. 3.

Navarro testified that after the two had separated, Grier pointed the gun at him, but Navarro "was trying to go back at him" when onlookers held him back. At that point, Grier "shot in the air." App. at 58; Tr. at 17, l. 18. After that, Navarro testified that they "both walked away. He went his way and I went my way." App. at 59; Tr. at 18, l. 13.

Under Pennsylvania law, a person commits an aggravated assault when, inter alia, s/he "attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon." 18 Pa. Cons. Stat. § 2702(a)(4). "Simple assault by physical menace" is defined under Pennsylvania law as an "attempt by physical menace to put another in fear of imminent serious bodily injury." 18 Pa. Cons. Stat. § 2701(a)(3), and includes pointing a gun at someone without firing it.

Self-defense is an affirmative defense, and forms a complete defense under Pennsylvania law "when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful

63

force by the other person." <u>Commonwealth v. Gray</u>, 867 A.2d 560, 568 (Pa. Super. Ct. 2005) (internal quotation and citation omitted). A person is only entitled to use that force which is reasonably necessary to protect himself. <u>See</u> <u>Commonwealth v. Harvey</u>, 812 A.2d 1190, 1996 (Pa. 2002). The use of deadly force is not permissible unless "the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat." 18 Pa. Cons. Stat. § 505(b)(2).

In this case, there is no evidence that Grier used deadly force because the evidence does not show that he ever fired the gun at Navarro. Rather, the evidence was that he pointed the gun at Navarro and then fired it in the air in order to end the fight. The first time the gun went off, Grier and Navarro were engaged in a struggle on the ground, while bystanders were also trying to wrestle the gun away from Grier. There is evidence that the gun discharged accidentally as a result of the struggle with Navarro and bystanders. Grier uttered no threats and appeared to use the gun only as a means of warding off a further attack and ending the struggle. The record contains ample evidence that Navarro was the aggressor and that Grier was acting only in self-defense.

The majority contends:

64

It is arguable – and is argued by Grier on appeal – that the record shows that the gun accidentally dropped from his pocket during the altercation, and that his subsequent actions were intended merely to dissuade Navarro from continuing the fight. An equally plausible explanation of the evidence, however, is that Grier intentionally pulled the gun from his clothing and, while the two men were on the ground, fired a shot in an attempt to harm or kill Navarro. He thereafter rose and aimed the gun once again at Navarro but, for whatever reason, decided to fire the weapon skyward and withdraw from the fight.

See Maj. Typescript Op. at 28-29.

By stating that it is "equally plausible" that Grier fired at Navarro as that the gun fell out of his pocket accidentally, the majority in effect concedes that the District Court erred in finding, even by a preponderance of the evidence, that Grier committed an aggravated assault. Preponderance requires more than plausibility.

The Pennsylvania statute defines aggravated assault in the alternative - the defendant must have attempted to or intentionally caused bodily injury with a deadly weapon.

65

There is no suggestion that Grier actually injured Navarro with the gun. Therefore, the predicate for the District Court's conclusion that Grier committed an aggravated assault by a preponderance of the evidence must have been that it was more likely than not that Grier attempted to cause bodily injury to Navarro with the gun. See 18 Pa. Cons. Stat. § 2702(a)(4). Yet the majority chooses to ignore the copious evidence that Navarro was the aggressor and that Grier was acting only in self-defense. When Grier stepped away from Navarro and fired a shot in the air he was seeking to end the fight–firing in the air is not a mysterious gesture as the majority chooses to portray it, but can fairly be described as a universally understood gesture of detente or warning. In fact, state charges filed against Grier after the incident were dismissed.

The District Court itself acknowledged Navarro's responsibility for the altercation by departing downward two levels due to the victim's partial responsibility under U.S.S.G. § 5K2.10. If the District Court believed that Navarro was responsible for the altercation, it should have given closer consideration to his claim of self-defense, which is a complete defense to aggravated assault under Pennsylvania law, and which, as Grier argued at sentencing, could also reduce the predicate offense to simple assault by mutual consent. See 18 Pa. Cons. Stat. § 2701(b)(1). The majority argues that the "mutual consent" exception does not exist for aggravated assault, but ignores the fact that under Pennsylvania law, simply pointing a gun at someone without firing it is not an

66

aggravated assault, but a simple assault by physical menace, to which the mutual consent exception does apply. See Commonwealth v. Matthews, 870 A.2d 924, 929 (Pa. Super. 2005); 18 Pa. Cons. Stat. § 2701(a)(3). The majority also strains to avoid the effect of Grier's recent brain surgery on the reasonableness of his self-defense claim. It may be that Grier reasonably believed he was at particular risk of incurring a life-threatening injury during a fistfight, but this is a question that should be examined by the District Court in the first instance.

The majority concludes that the District Court did not err in finding that Grier had committed an aggravated assault based on the barest evidence to support his charge in the record. But the majority ignores the clear error standard, which requires us to reverse a District Court's finding of fact as clearly erroneous "'when although there is evidence to support it, [we] are left with the definite and firm conviction that a mistake has been committed.'" Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal., 508 U.S. 602, 622 (1993) (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)).

Because I believe that the District Court's enhancement of Grier's sentence based on a finding that he committed aggravated assault is wholly unsupported by the

record under any standard, I would remand with instructions to resentence without the enhancement.

## IV.

For the foregoing reasons, I dissent both from the Court's holding that the proper standard of proof for a sentencing enhancement based on a finding of guilt of an underlying offense is a preponderance of the evidence and from its remand that in effect permits the court to reconsider the issue of aggravated assault because it is unsupported by the evidence.